IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| FAYELYNN SAMS and HAROLD SAMS, individually, and on behalf of class of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION |
| WINDSTREAM COMMUNICATIONS, INC., WINDSTREAM GEORGIA, LLC, and WINDSTREAM GEORGIA COMMUNICATIONS, LLC, | ) ) ) ) ) | FILE NO. 1:10CV3525-TCB |
| Defendants. | ) ) | |

**DEFENDANTS' MOTION FOR JUDGMENT ON
THE PLEADINGS AND BRIEF IN SUPPORT**

Frank M. Lowrey IV
Georgia Bar No. 410310
Alison B. Prout
Georgia Bar No. 141666

**BONDURANT, MIXSON & ELMORE, LLP**
One Atlantic Center, Suite 3900
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

871424.1

All defendants move for judgment on the pleadings in this action by Plaintiffs Fayelynn Sams and Harold Sams. The complaint alleges that Defendants violated the federal Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, ("SCA") by providing Windstream subscriber Harold Sams's account information to Georgia state law enforcement in response to a grand jury subpoena. Plaintiffs do not contest that Defendants provided this information only in response to a subpoena issued by a Georgia Superior Court as part of child pornography criminal investigation. Instead, Plaintiffs argue that Defendants violated the SCA by accepting service of this subpoena by fax at Defendants' subpoena administrator's central office in North Carolina, rather than insisting on statutory service of process by some other means. Defendants had established this central clearinghouse to receive law enforcement subpoenas pursuant to FCC regulations. 47 C.F.R. § 1.20003.  Because Defendants accepted service by fax at their central office, rather than insisting on registered mail delivery to their Georgia agent for service of process, Plaintiffs want thousands of dollars for themselves and millions for a class.

The SCA requires that Internet service providers ("ISPs") disclose subscriber information in certain contexts and prohibits disclosure in others. To prevail, Plaintiffs must demonstrate that the SCA implicitly prohibits an ISP from complying with a subpoena unless service of process has been perfected under the law of the issuing jurisdiction *and* that it also implicitly limits an ISP's right to waive service or

to accept service by alternative methods, even if state law (like Georgia law) allows a recipient to do that for any subpoena. The SCA does not explicitly do either of these things. And the absence of any reference to required methods of service in the detailed statutory scheme strongly suggests that Congress did not silently intend that either of these propositions be read into the SCA.

Further, the language that Congress chose points away from Plaintiffs' interpretation. Specifically, the Act requires only that the government agency "use" a criminal subpoena. 18 U.S.C. § 2703(c)(2). It says nothing about service of process at all. So it certainly says nothing about overriding the background law concerning subpoenas, which is that service requirements exist solely to protect the subpoena *recipient* and that the recipient can accept service by an alternative means or waive service altogether without somehow rendering the subpoena invalid. Tellingly, Plaintiffs "interpret" terms that do not appear in the SCA at all, by arguing that the SCA requires "compelled" disclosure or a "valid" subpoena.

The purpose of the SCA comes no closer than the text to supporting Plaintiffs' interpretation. The Act protects subscriber information from "wrongful use and public disclosure by law enforcement authorities . . . while protecting the Government's legitimate law enforcement needs." P.L. 99-508, 1986 U.S.C.C.A.N 3555, 3557 (legislative history). Significantly, Congress has stated that one purpose of the SCA is to combat cross-jurisdictional delays in criminal investigations:

> ***[Section 2703(a)] attempts to address the investigative delays caused by the cross-jurisdictional nature of the Internet***. . . . An investigator, for example, located in Boston who is investigating a suspected terrorist in that city, might have to seek a suspect's electronic e-mail from an Internet service provider (ISP) account located in California.  The investigator would then need to coordinate with agents, prosecutors and judges in the district in California where the ISP is located to obtain a warrant to search.  ***These time delays could be devastating to an investigation, especially where additional criminal or terrorist acts are planned.***

H.R. Rep. No. 107-236, pt. 1 at 57 (2001) (emphasis added).  While the commentary addresses federal search warrants, the need to avoid cross-jurisdictional delay is no different for subpoenas, which are subject to less stringent substantive and procedural rules.  The interpretation Plaintiffs advocate directly contravenes this purpose; it raises the time and cost for law enforcement to conduct investigations without increasing any substantive protection for subscriber information.

The background law within which the SCA operates universally permits the recipient of a subpoena to waive service or accept service by alternate means, and holds that third parties (such as Plaintiffs here) lack standing to challenge how a subpoena is served on someone else. Indeed, in the single precedent most relevant to this case, a district court found that defendants who responded to faxed criminal subpoenas were protected by the SCA's immunity provision, and also that the plaintiff lacked standing to challenge the method of service accepted by the defendants. *Booker v. Dominion Va. Power*, No. 3:09cv759, 2010 U.S. Dist. LEXIS 44960, at *10 (E.D. Va. May 7, 2010). Thus, even if the SCA implicitly

incorporates state law regarding service of subpoenas, it would likewise incorporate state law allowing the recipient to accept service by the means it chooses or to waive service or personal jurisdiction, and denying a third party standing to challenge service. Nothing in the text or purpose of the SCA warrants overriding this law.

In sum, Plaintiffs' interpretation of the SCA is not required by its text, its purpose or the background law. And it could hardly be less compelling. According to Plaintiffs, Defendants were obligated, upon receiving the faxed subpoena, to refuse service, in which case the investigator would have hand-delivered or sent the subpoena by registered mail to Defendants' Georgia agent. This runs contrary to our justice system's general encouragement of cooperation with subpoenas issued by state and federal courts and waiver of formal service. *See, e.g.*, O.C.G.A. § 9-11-4(d) (corporation has "a duty to avoid unnecessary costs" of service); Fed.R.Civ.P. 4(d)(2) (imposing costs on defendant that fails to waive formal service without good cause).

## FACTS

Defendants provide Internet services to more than one million subscribers in 23 states. Complaint ¶ 15. Defendants are registered to do business in Georgia and other states. *Id.* ¶¶ 8, 10, 12, 15. Plaintiffs allege that they are subscribers of Defendants' Internet services and that Defendants disclosed their subscriber information to "law enforcement and other government entities" in December 2008.

*Id.* ¶¶ 5, 30.[1]

Plaintiffs fail to allege what specific information was disclosed, or to whom. But because the relevant subpoena and Defendants' response are central to Plaintiffs' claims, the Court may consider these documents—which provide this precise information—in this motion for judgment on the pleadings.[2] These documents reveal that on December 3, 2008, a grand jury subpoena was issued by the Superior Court of Lowndes County, Georgia, signed by the Clerk of the Court and witnessed by a Superior Court Judge. Harp Aff. at Ex. A at 3. On December 4, 2008, the District Attorney served the subpoena by fax on Defendants along with a cover page stating, "*This is a child pornography case, so Please Rush." *Id.* at Ex. A at 1.

The originating fax number was registered to "DISTRICT ATTY OFFICE" according to the fax header, and Windstream employee Lethlyn Pumphrey-Harp (denoted as LPH) further verified the legitimacy of the subpoena by telephone at

---

[1] Though not relevant to this motion, Plaintiff Fayelynn Sams is not and never was a Windstream subscriber. Defendants also note that they did not disclose any account information, or other information, of Fayelynn Sams.

[2] *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (a document attached to a motion for judgment on the pleadings "may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed."). Defendants have concurrently filed a Motion for Leave to File Under Seal the April 14, 2011 Harp Affidavit ("Harp Aff.") with the subpoena and Defendants' response thereto attached as Exhibits A and B of the affidavit, respectively.

871424.1

11:00 a.m. on December 8. *Id.* at Ex. A at 2. At 3:32 p.m. that same day, she

complied with the grand jury subpoena by providing the requested account

information to the District Attorney's Office. *Id.* at Ex. B at 5. The only information

Windstream disclosed was the user name, Internet session dates and times, name,

address, account type and status associated with the IP addresses provided in the

subpoena. *Id.* at Ex. B at 3. Defendants' compliance with this grand jury subpoena,

and nothing more, forms the basis of Plaintiffs' multi-million dollar class action

complaint.

## PROCEDURAL BACKGROUND

At a March 3, 2011 status conference, the Court observed that the case is not

highly dependent on the factual evidence, but rather is "a purely legal question."

Doc. 31 (3/3/11 Tr.) at 10. As a consequence, the Court suggested that Defendants

file (the present) dispositive motion before it ruled on the discovery issues on which

the parties had mutually sought guidance. *Id.* at 26.[3] The Court also shared its initial

view of Plaintiffs' claims:

> [M]y first impression is that the federal statute, 18 U.S.C. Section 2703, and
> Section 2702, both of them, do not seem to focus on this [service] issue and
> speak more generically and thus more broadly as to what type of document is
> sufficient to require the entity upon whom the subpoena is served to comply
> with the subpoena. And it's significant to the Court that this business, the

---

[3] With the Court's permission, Defendants have reserved the right to bring one or
more subsequent dispositive motions, including motions for summary judgment,
raising additional defenses against Plaintiffs' claims. *Id.* at 29. This motion strictly
addresses the legal issue raised during the March 3 status conference.

defendants, although they have an office in North Carolina, they're authorized to transact business everywhere in the country. So, I think it would be elevating form over substance to an extent not contemplated by Congress or the statute to require that the subpoena be issued by the – a court in the state where the subpoena is – is served in order for it to be effective.

*Id*. at 16-17. The Court's initial view is borne out by the law.

## ARGUMENT AND CITATION OF AUTHORITY

"Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). Plaintiffs' claim hinges on their legal interpretation of the SCA and so is well-suited for determination in a motion for judgment on the pleadings.

## I.   Defendants Complied with the Plain Language of the SCA.

### A.   The SCA Requires Only that the Government "Use" a Subpoena.

The controlling provision of the SCA, 18 U.S.C. § 2703(c)(2), requires service providers to provide subscriber information in response to state grand jury subpoenas and several other government vehicles.[4] Critically, this provision does not address service of process (nor does any other provision of the SCA). Section

---

[4] There is a key distinction in the SCA between "account information" and the "content" of electronic communications.  Defendants disclosed only a subset of the account information listed in 18 U.S.C. § 2703(c)(2) in response to the Sams subpoena.  *See* Harp Aff. at Ex. B at 3.  Disclosure of content is not at issue.

2703(c)(2) states:

> A provider of electronic communication service or remote computing service **shall** disclose to a governmental entity the [account information] of a subscriber to or customer or such service when the governmental entity **uses** an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena or any means available under paragraph (1).

18 U.S.C. § 2703(c)(2) (emphasis added).[5] The next subpart, 2703(c)(3), specifies that notice to the subscriber is not required.

The verbs chosen by Congress are critical. First, a service provider "shall" *i.e.*, must, disclose subscriber information in certain circumstances. Second, the service provider must respond when a government entity "uses" a grand jury subpoena. Notably, the statute does not say "serves" a subpoena, let alone that the ISP cannot accept service through the means of its choice. Thus, the statute lays out two and only two specific prerequisites to when an ISP is required to disclose subscriber information: (1) the governmental entity "uses" a subpoena, and (2) the subpoena be a state grand jury or trial subpoena (or one of the other enumerated vehicles). Here there can be no serious dispute that the Lowndes County District Attorney "used" a state grand jury subpoena.

---

[5] This modifies the preceding disclosure prohibition, which states, "[A] provider of remote computing service or electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by paragraph (1) or (2)) to any governmental entity."  18 U.S.C. § 2702(a)(3).

871424.1

Sams's argument requires the Court to read into section 2703(c)(2) the additional implicit requirement that a service provider ***must not*** disclose account information when the government "uses" a grand jury subpoena, but does not effect service according to the issuing state's statutory service requirements. Indeed, Plaintiffs' argument also would require the Court to find that section 2703(c) implicitly limits a service provider's well-established right to accept service by different methods, even where, as here, that right is recognized as part of the relevant state's law regarding service of subpoenas. Neither proposition is supported by the text of the statute or by any other law. *See, e.g.*, *United States v. Bach*, 310 F.3d 1063, 1067 (8th Cir. 2002) (finding that even though "no warrant was physically 'served,' . . . the officers complied with the provisions of the Electronic Communications Privacy Act, 18 U.S.C. § 2701.").

Rather than applying the statutory text, Plaintiffs attempt to reframe the legal issue as whether Defendants' compliance with the subpoena was "voluntary." *See* Complaint ¶ 41 (arguing that the SCA "regulates ***voluntary*** disclosure by network service providers of customer communications and records") (emphasis added). Neither the word nor the notion of voluntariness, however, appear anywhere in the text of the statute.[6] The SCA requires only that the government "use" a subpoena,

---

[6] The term "voluntary" does appear in the ***heading*** of a preceding section, 2702(a), but the text of that section never uses that term.  The Supreme Court has cautioned against relying on a statute's heading where its text is unambiguous.  *Pa. Dep't of*

and the government "uses" a subpoena whether or not the recipient elects to receive service of that subpoena via an alternate means or waives service.

And even if the question were one of voluntariness, accepting service by fax rather than demanding statutory service by overnight delivery does not render Defendants' compliance "voluntary" in any meaningful sense. *Cf., Bumper v. North Carolina*, 391 U.S. 543, 549 (1968) (holding that voluntariness cannot be proven by a showing of "acquiescence to a claim of lawful authority"); *United States v. Waksal*, 709 F.2d 653, 659 n.11 (11th Cir. 1983) ("acquiescence may not substitute for free consent"). Indeed, one court—in the context of the SCA—expressly rejected the argument that responding to a search warrant lacking a judge's signature rendered the response "voluntary":

> This is not a situation where, on its own initiative, AOL voluntarily disclosed Plaintiff's subscriber information to the government. Instead, the government's request, submitted with an invalid warrant, triggered AOL's response, six days later.

*Freedman v. Am. Online, Inc.*, 303 F. Supp. 2d 121, 128 (D. Conn. 2004). Agreeing to accept service by fax of a subpoena that the government can serve by mail or deliver to an in-state agent is not "voluntary" in any real sense of the word.

---

*Corrs. v. Yeskey*, 524 U.S. 206, 212 (1998) ("And for the same reason we disregard petitioners' invocation of the statute's title . . . . 'The title of a statute . . . cannot limit the plain meaning of the text. For interpretive purposes, [it is] of use only when [it] sheds light on some ambiguous word or phrase.'") (citation omitted). Here, Plaintiffs appear to advocate relying on the heading of one provision to interpret an entirely separate—and unambiguous—provision.

871424.1

**B.      The SCA Immunizes a Party that Discloses Subscriber Information
in Response to a Government Entity that "Uses" a Grand Jury
Subpoena.**

Not only does the SCA omit any prohibition against responding to a subpoena

lacking statutory service, it provides express immunity against ***any*** liability on any

cause of action in any court based on the disclosure of information pursuant to the

statute:

> ***No cause of action shall lie*** in any court against any provider or wire or
> electronic communication service . . . ***for providing information***, facilities,
> or assistance ***in accordance with the terms of a*** court order, warrant,
> ***subpoena***, statutory authorization, or certification ***under this chapter***.

18 U.S.C. § 2703(e) (emphasis added). This confirms that an ISP supplying

information "in accordance with the terms" of a subpoena "under this chapter"

cannot be liable for its disclosure. Again, it contains no qualifications about method

of service—or even that service be perfected. Plaintiffs have no authority for their

theory that an ISP that accepted service of a subpoena by fax forfeits this immunity.

**C.      The SCA Also Immunizes a Party that Discloses Subscriber
Information Based on a Good Faith Misunderstanding of the
Limits of Its Authority to Disclose Subscriber Information.**

Even if the Court found that Defendants had technically violated the SCA (for

which there is no authority), the SCA contains a good faith provision, section

2707(e), that nevertheless warrants dismissal of Plaintiffs' claims. An ISP is not

liable if it demonstrates "[a] good faith reliance on . . . a grand jury subpoena."

While the statute does not define "good faith," courts have construed it broadly to

871424.1

11

protect an ISP that misapprehends its lawful ability to disclose information:

> Congress specifically anticipated that communication service providers might, in good faith, misapprehend their lawful ability to intercept or disclose communications in certain circumstances. Congress addressed that problem with a broad, affirmative good faith defense. . . Thus, Congress contemplated that service providers might, in good faith, **misunderstand the limits of their authority** on a particular set of facts, and provided a statutory mechanism to solve this problem.

*United States v. Councilman*, 418 F.3d 67, 83-84 (1st Cir. 2005) (emphasis added)

(citing identical good faith protection in the Wiretap Act).

In other words, good faith reliance is not limited to cases where a provider mistakenly believes that a forged subpoena is a real subpoena; it includes cases where providers "misunderstand the limits of their authority" to disclose information. Defendants required the government to "use" a grand jury subpoena, and they went a step further, following up to confirm its legitimacy. Even if the Court were to conclude that Defendants were mistaken about their ability under the SCA to accept service by fax to their central subpoena administrator, the mistake would fall squarely within the protection created by section 2707(e). Defendants could hardly be found liable for interpreting the statute the same way the Court did at the March status conference.[7]

---

[7] Courts routinely fine no bad faith for violations of statutes based on nonfrivolous constructions of those statutes. *See, e.g., United States v. Williams*, 622 F.2d 830, 843 (5th Cir. 1980) (in analyzing when the good faith exception applies to the exclusionary rule, the Fifth Circuit held that "The most common forms of 'technical violations' made in good faith are arrests made . . . on a reasonable interpretation of

Plaintiffs might argue that good faith is a question of fact not suited for judgment on the pleadings. Yet multiple appellate courts have affirmed dismissals in reliance on section 2707(e). *See, e.g.*, *Bansal v. Server Beach*, 285 Fed. Appx. 890, 892 (3d Cir. 2008) (affirming grant of motion to dismiss where "we agree with the District Court that it has a complete defense against Bansal's claims, because it divulged his emails pursuant to a court order arising from his criminal prosecution. See 18 U.S.C. § 2707(e)"); *McCready v. eBay, Inc.*, 453 F.3d 882, 892 n.2 (7th Cir. 2006) ("[R]esolution is appropriate here as a judgment on the pleadings under Rule 12(c). ***Because the substantive issue involves the defendants' good faith, which may be shown with a facially valid subpoena, more evidence could not have made a difference***.") (emphasis added); *Bansal v. Mirosoft Hotmail*, 267 Fed. Appx. 184, 185 (3d Cir. 2008) ("the SCA exempts all parties acting pursuant to a court order from liability. 18 U.S.C. § 2707(e).").

Just as in *McCready*, "[b]ecause the substantive issue involves the defendants' good faith, which may be shown with a facially valid subpoena, more evidence could not have made a difference." 453 F.3d at 892, n.2. Indeed, here, in addition to receiving a signed, witnessed, and facially valid subpoena, Windstream

---

a statute that is later construed differently."); *United States v. Murdock*, 290 U.S. 389 (1933) (defendant did not "willfully" fail to supply information to tax authorities where he reasonably believed he had a constitutional right not to do so); *McLaughlin v. Union Oil Co.*, 869 F.2d 1039, 1047 (7th Cir. 1989) ("A violation is not willful when it is based on a nonfrivolous interpretation of OSHA's regulations.").

871424.1

verified the subpoena's authenticity before responding. Harp Aff. at Ex. A at 2. This is more than enough for the Court to conclude that the Defendants are not liable under the SCA, even if it somehow found a technical violation of the statute.

## II.   Even if the SCA Assumes Service of the Subpoena, It Does Not Prevent a Party from Accepting Service by Fax.

Even if the SCA did not permit an ISP to disclose account information when the government simply "used" a subpoena, but rather required the ISP to wait for the government to "serve" the subpoena, Plaintiffs could not prevail unless they could establish that the statute also limited the universally recognized right of a party to consent to service by alternative means—or to simply waive service. There is no basis to read such an unusual provision into the SCA where Congress chose not to include an express one.

### A.   Defendants Were Served with the Subpoena.

Plaintiffs acknowledge that Defendants received a subpoena; they complain only that it was served by fax out-of-state. This matters because while Georgia's service statutes set forth the methods of service that *must* be accepted by a recipient, they do not set forth the only methods of service that *may* be accepted. *See* O.C.G.A. § 14-2-504(c) (setting forth allowable methods for serving a corporation and stating, "This Code section does not prescribe the only means, or necessarily the required means, of serving a corporation"); O.C.G.A. § 24-10-23 (listing several methods in which subpoenas "may" be served); *see also* Fed.R.Civ.P. 12(h) (party

waives objection to lack of service of process by failing to timely object); *accord*

O.C.G.A. § 9-11-12(h); Fed.R.Crim.P. 12(b) (defense of improper service of process

may be waived). Thus, Plaintiffs do not complain that Defendants were not served

with the subpoena; Plaintiffs argue only that the service did not comply with a

statutory ***method*** of service. This is significant because, as set forth in the following

section, Plaintiffs have no standing to challenge the method by which Defendants

accept service.

### B.     Plaintiffs Have No Standing to Challenge the Method by Which Defendants Accept Service.

In the most on-point precedent, decided six months before Plaintiffs filed this

action, a district court rejected a plaintiff's claim that the defendants lacked

authority to respond to a criminal subpoena served by fax, and held that the

defendants were protected by the SCA's immunity provision. In *Booker v.*

*Dominion Va. Power*, No. 3:09cv759, 2010 U.S. Dist. LEXIS 44960, at *10 (E.D.

Va. May 7, 2010), two corporate witnesses, TDS and Dominion, disclosed an

individual, Booker's, subscriber information in response to faxed criminal

subpoenas. Booker sued TDS and Dominion for damages and a declaratory

judgment that "Dominion and TDS did not have the authority to 'fulfill a 'faxed'

subpoena.'" *Id*. at *9-10.

The district court dismissed on two grounds. First, Booker lacked standing to

challenge the method of service accepted by Dominion and TDS:

> To the extent Booker seeks to assert a claim against Dominion, or TDS, for accepting service of the subpoena by facsimile, ***the right to insist on service by a particular means is a right personal to Dominion that Booker lacks standing to challenge***.

*Id*. at *16 (emphasis added). Second, although Booker's claims were not based on the SCA, the court found that the SCA's immunity provision precluded liability on any of Booker's legal theories:

> In addition, as TDS also argues, the Complaint does not state a claim against TDS upon which relief can be granted because the Complaint is barred by 18 U.S.C. § 2703(e). ***Section 2703(e) bars any cause of action against a telecommunications provider for providing information in response to a subpoena***.

*Id*. at *22 (emphasis added). Notably, the court applied the straightforward language of section 2703(e) without adding any of the language (e.g., "valid" or "statutorily served") that Plaintiffs want to add here.

The premise of *Booker*, that a third party lacks standing to challenge how a recipient of a subpoena is served, is well-established.[8] *Booker* simply and correctly

---

[8] *See, e.g.*, *Anglin v. Maxim Healthcare Servs.*, No. 6:08-cv-689, 2009 U.S. Dist. LEXIS 34562, at *3 (M.D. Fla. Apr. 3, 2009) ("Generally a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought."); *Ribbens Int'l, S.A. de C.V. v. Transp. Int'l Pool, Inc.*, 45 F. Supp. 2d 982, 984 (C.D. Cal. 1999) ("any defect in the method of service employed here threatens only the rights of the served party . . . Accordingly, [Plaintiff] lacks standing to object to the method of service employed."); *Windsor v. Martindale*, 175 F.R.D. 665 (D. Colo. 1997) (defendant lacks standing to move to quash third-party subpoena based on defective service); *see also United States v. Evans*, 574 F.2d 1287, 1288 (5th Cir. 1978) ("Evans lacks standing to object that

applies this principle to the SCA, and finds that the SCA does not alter the universal limitation on standing to challenge service.

## III.   Defendants Are Subject to Personal Jurisdiction in Georgia, Regardless of How or Where the Subpoena Was Served.

Plaintiffs argue that Defendants violated the SCA, not only by accepting service by fax, but by accepting service outside the state of Georgia. This simply raises a question of whether Defendants were subject to the personal jurisdiction of Georgia courts. Because personal jurisdiction is a waivable right that is personal to Defendants and because there is no question here that Defendants were subject to personal jurisdiction in Georgia, Plaintiffs' challenge fails.

### A.   Plaintiffs' Challenge to the Method and Place of Service Boils Down to a Challenge to the Georgia Court's Personal Jurisdiction over Defendants.

Plaintiffs' contentions that the subpoena was served (1) by improper means and (2) beyond the jurisdictional limits of the Superior Court of Lowndes County, Georgia, both raise the question of whether the Georgia court had personal jurisdiction over Defendants. "[S]ervice of process is to provide notice of the pendency of the action . . . and goes to the question of in personam jurisdiction." *Fid. & Cas. Co. v. Tex. E. Transmission Corp.*, 15 F.3d 1230, 1236 (3d Cir. 1994) Specifically, service of process is one of two components of personal jurisdiction:

---

records admitted at his trial were obtained from his employer through an administrative summons rather than by subpoena or search warrant.").

871424.1

> The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted.

*Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010) (citation omitted); *see also Zelson v. Thomforde*, 412 F.2d 56, 59 (3d Cir. 1969) ("the possible invalidity of the service of process under New Jersey's long arm statute is a matter of personal jurisdiction").

Here there is no question that Defendants were amenable to jurisdiction since they conduct business in the state and maintain registered agents in Georgia. Complaint ¶¶ 8, 10, 12. *See Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199 (8th Cir. 1990) ("One of the most solidly established ways of giving such consent [to personal jurisdiction] is to designate an agent for service of process within the State."). Of course, Plaintiffs themselves assert that Defendants are subject to personal jurisdiction in Georgia and subject to discovery of their out-of-state records in this litigation. Complaint ¶¶ 9, 11, 13. Thus, Plaintiffs cannot and do not challenge Defendants' amenability to personal jurisdiction in Georgia – Defendants are "within the substantive reach of [Georgia's] jurisdiction under applicable law." *Baragona*, 594 F.3d at 855. Plaintiffs challenge only service of process, which is "simply the physical means by which that jurisdiction is asserted." *Id.*

871424.1

18

However, the decision not to dispute personal jurisdiction waives any defect in service. *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986); *Relational, LLC v. Hodges*, 627 F.3d 668, 672 n.4 (7th Cir. 2010) (defective service is a defense against personal jurisdiction, and may be waived); *Valdez v. Feltman*, 328 F.3d 1291, 1299 (11th Cir. 2003) ("a party's right to dispute personal jurisdiction on insufficient service of process grounds [can be] waived"). And, although the issue arises more often in civil cases, waiver of personal jurisdiction is equally permitted in criminal cases. *See, e.g, United States v. Marquez*, 594 F.3d 855, 859 n.4 (11th Cir. 2010).[9] This is fatal to Plaintiffs' claims, because as set forth in the next section, personal jurisdiction is a personal right that cannot be asserted by anyone other than the recipient of process.

### B.  Objection to Personal Jurisdiction Is a Personal Right that Cannot Be Asserted by Another Party.

A lack of personal jurisdiction can be raised only by the recipient of process. "Unlike subject matter jurisdiction, personal jurisdiction and venue represent a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty. As a result, both are waivable by the affected parties, and therefore **cannot be raised on their behalf by anyone else**." *Jenkins v. Smead Mfg. Co.*, No. 09-CV-0261-IEG (BLM), 2009 U.S. Dist. LEXIS 101545, at *9 (S.D. Cal.

---

[9] *Accord United States v. Kahl*, 583 F.2d 1351 (5th Cir. 1978) (waiver occurs under Fed.R.Crim.P. 12).

871424.1

Oct. 28, 2009) (emphasis added) (citation omitted); *see also Smithkline Beecham Corp. v. Geneva Pharms.*, 287 F. Supp. 2d 576, 580 (E.D. Pa. 2002) ("Geneva lacks standing to contest personal jurisdiction on Sumika's behalf"); *Duttle v. Bandler & Kass*, No. 82 CIV 5084, 1992 U.S. Dist. LEXIS 8894 (S.D.N.Y. June 23, 1992) (same). As the Supreme Court has explained:

> The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty. . . . Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived. . . . *[R]egardless of the power of the State to serve process, an individual may submit to the jurisdiction of the court by appearance.*

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-03 (1982) (emphasis added). In other words, the right to insist upon (or submit to) personal jurisdiction is an "individual right." *Id*. Had Congress intended to implicitly override such a well-established principle, it would have said so. Plaintiffs can point to no authority even suggesting that the SCA converts this individual right into an *obligation* to contest jurisdiction.

### C.   A Party Subject to Personal Jurisdiction in Georgia Can Be Required to Bring Its Documents and Witnesses to the State.

Plaintiffs make much of the fact that Defendants' subpoena administrator is located outside of Georgia. As a practical matter, it would make no sense to require ISPs to maintain a subpoena administrator (in addition to a registered agent) in every state where they do business. In fact, federal law requires the exact opposite.

871424.1

The Communications Assistance for Law Enforcement Act (CALEA) requires that telecommunications carriers appoint one senior officer or employee to facilitate the interception of communications in accordance with lawful authorization. 47 C.F.R. § 1.20003.

And as a legal matter, Plaintiffs draw a distinction without a difference. When a corporation is subject to the jurisdiction of a state, its courts can require the corporation to bring documents (or witnesses) that reside outside the state into the jurisdiction. As this Court has explained:

> The force of a subpoena for production of documentary evidence generally reaches all documents under the control of the person or corporation ordered to produce, saving questions of privilege and unreasonableness. ***It makes no difference that a particular document is kept at a place beyond the territorial jurisdiction of the court that issues the subpoena.***

*Security Mortg. Investors v. Hicks*, 1975 U.S. Dist. LEXIS 16769, at *14 (N.D. Ga. Dec. 30, 1975) (emphasis added); *see also In re Marc Rich & Co., A.G.*, 707 F.2d 663, 667 (2d Cir. 1983) ("So long as the court which must enforce the grand jury process can obtain personal jurisdiction of the summoned witness, the witness may not resist the summons . . . on the ground that the documents are located abroad.").[10]

---

[10] *See also Valdes v. Swift Transp. Co.*, 292 F. Supp. 2d 524, 532 (S.D.N.Y. 2003) ("a foreign corporation that conducts business in New York and its officers and employees who have knowledge of the activity in question are subject to subpoenas issued under C.P.L.R. § 7505, regardless of where they reside"); *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522, 541 (1987) ("when a litigant is subject to the jurisdiction of the district court, arguably

Defendants could not have resisted the subpoena on the ground that it seeks records maintained in North Carolina, Arkansas and perhaps elsewhere, anymore than it could resist discovery in this action on that ground.

Indeed, one court has expressly held that there is no jurisdictional or other barrier to permitting a federal district court where the crime occurred to issue a search warrant outside its jurisdiction under the SCA:

> Common sense dictates the result reached herein.  Judicial and prosecutorial efficiency is better served by permitting the federal district court for the district where the crime allegedly occurred to preside over both the investigation and prosecution of that crime.  Commentators have suggested that one reason for the amendments [to the SCA] effected by Section 220 of the Patriot Act was to alleviated the burden placed on federal district courts in the Eastern District of Virginia and the Northern District of California where major internet service providers ("ISPs") AOL and Yahoo, respectively, are located.

*In re Search of Yahoo, Inc.*, No. 07-3194-MB, 2007 U.S. Dist. LEXIS 37601, at *11 (D. Ariz. May 21, 2007).  Just like the federal district courts in Virginia and California, state courts where major ISPs are located would be equally flooded with

---

the evidence it is required to produce is not 'abroad' within the meaning of the [Hague] Convention, even though it is in fact located in a foreign country at the time of the discovery request and even though it will have to be gathered or otherwise prepared abroad."); *Standard Fruit & Steamship Co. v. Waterfront Comm'n of New York Harbor*, 371 N.E.2d 453, 455 (N.Y. 1977) ("We hold that a corporation doing business in New York may be subpoenaed to testify as a witness about a corporate transaction through its officers and employees who have knowledge of the transaction. It is no excuse to say that the officers and employees who participated in the corporate transaction involved are not within the jurisdiction or that they refuse to appear or testify in New York.").

subpoena requests if Plaintiffs' interpretation of the SCA were adopted.

## IV.    Plaintiffs' Remaining Counts Fail as a Matter of Law.

Along with their SCA claim, Plaintiffs also claim that Defendants violated the Wiretap Act, 18 U.S.C. § 2510 (Count 2), committed breach of contract (Count 3), and breached an implied duty of good faith and fair dealing (Count 4). If the SCA claim is dismissed, each of these claims should be dismissed too. In addition, the Wiretap Act and breach of implied duty claims should be dismissed as defective on their face.

The Wiretap Act contains a good faith provision identical to the SCA, providing that "a grand jury subpoena . . . is a complete defense against any civil or criminal action brought under this chapter." 18 U.S.C. § 2520(d). The Wiretap Act comes no closer than the SCA to requiring that the government serve a subpoena by some particular means or forbidding a corporation to accept service by fax or waive service altogether, if it is more efficient than formal service. If Defendants are not liable under the SCA, they cannot be liable under the Wiretap Act either.

Moreover, unlike the SCA, the Wiretap Act prohibits the disclosure only of intercepted "contents" of communications. *See* 18 U.S.C. § 2511(1)(c); *see also Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir. 2002) ("The Wiretap Act, however, prohibits **only** 'interceptions' of **electronic communications**. 'Intercept' is defined as 'the aural or other acquisition of the **contents** of any wire,

electronic, or oral communication through the use of any electronic, mechanical, or other device.") (emphasis added).[11] Because the subpoena response demonstrates that Defendants did not disclose any contents of communications, Harp Aff. at Ex. B at 3, Plaintiffs have no Wiretap Act claim.

Plaintiffs' contract theory rides coat-tails on its SCA claim, since it merely asserts that "Windstream breached the [Privacy Statement] by disclosing subscriber's [sic] private information and data to law enforcement and other government entities without compliance with the terms of a valid legal process." Complaint ¶ 86. If the SCA claim fails, so does the breach of contract claim. Moreover, if Defendants produced information in compliance or even good faith reliance on the subpoena, the SCA would immunize Defendants against a breach of contract claim, no matter what the theory. The SCA allows *"[n]o cause of action … against any provider … for providing information … in accordance with the terms of a … subpoena.*" 18 U.S.C. § 2703(e) (emphasis added).

Finally, the claim for breach of implied duty of good faith and fair dealing is not viable as an independent claim, and should be dismissed, regardless of the disposition of the other claims. *See Cone Fin. Group, Inc. v. Emp'rs. Ins. Co.*, No. 7:09-CV-118, 2010 U.S. Dist. LEXIS 82820, at *5 (M.D. Ga. Aug. 13, 2010) ("The law is clear that there exists no independent cause of action for breach of

---

[11] "Contents" is defined as "any information concerning the substance, purport, or meaning of [electronic] communication." 18 U.S.C. § 2510(8).

871424.1

24

good faith and fair dealing outside of a claim for breach of contract."); *Am. Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1370 (N.D. Ga. 2006) ("the common law requirement of good faith and fair dealing is not an independent source of duties for the parties to a contract.").

## Conclusion

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for judgment on the pleadings on all claims.

Respectfully submitted, this 18th day of April, 2011.

*/s/ Alison B. Prout*
Frank M. Lowrey IV
Georgia Bar No. 410310
lowrey@bmelaw.com
Alison B. Prout
Georgia Bar No. 141666
prout@bmelaw.com

**BONDURANT, MIXSON & ELMORE, LLP**     *Attorneys for Defendants*
One Atlantic Center, Suite 3900
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

871424.1

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that this document complies with the font and point selections set forth in Local Rule 5.1(C). This document was prepared in Times New Roman 14 point font.

Respectfully submitted, this 18th day of April, 2011.

*/s/ Alison B. Prout*
Alison B. Prout
Georgia Bar No. 141666
Email: *prout@bmelaw.com*

871424.1

26

## CERTIFICATE OF SERVICE

I hereby certify that on this day, a true and correct copy of the within and

foregoing **DEFENDANTS' MOTION FOR JUDGMENT ON THE**

**PLEADINGS AND BRIEF IN SUPPORT** was electronically filed with the Clerk

of Court using the Court's electronic filing system which will automatically send an

email notification of such filing to the following attorneys of record who are

registered participants in the Court's electronic notice and filing system:

> Joshua A. Millican, Esq.
> Law Office of Joshua A. Millican, P.C.
> The Grant Building, Suite 607
> 44 Broad Street, N.W.
> Atlanta, Georgia  30303
>
> Lisa T. Millican, Esq.
> Greenfield Millican P.C.
> 607 The Grant Building
> 44 Broad Street, N.W.
> Atlanta, Georgia  30303
>
> Matthew C. Billips, Esq.
> Billips & Benjamin LLP
> One Tower Creek
> 3101 Towercreek Parkway, Suite 190
> Atlanta, Georgia  30339

and by U.S. Mail to:

871424.1

Joshua A. Millican, Esq.
Law Office of Joshua A. Millican, P.C.
The Grant Building, Suite 607
44 Broad Street, N.W.
Atlanta, Georgia  30303

This 18th day of April, 2011.

*/s/ Alison B. Prout*
Alison B. Prout
Georgia Bar No. 141666