IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FAYELYNN SAMS and HAROLD SAMS, individually, and on behalf of class of all others similarly situated, ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | CIVIL ACTION |
| WINDSTREAM COMMUNICATIONS, INC., WINDSTREAM GEORGIA, LLC, and WINDSTREAM GEORGIA COMMUNICATIONS, LLC, ) ) ) ) ) | FILE NO. 1:10CV3525-TCB |
| Defendants. ) | |

**BRIEF OF *AMICUS CURIAE* NATIONAL DISTRICT ATTORNEY'S ASSOCIATION IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

**STATEMENT OF INTEREST OF AMICUS CURIAE**

The National District Attorney's Association is a non-profit professional organization whose membership is comprised of district attorneys, state's attorneys, attorneys general, and county and city prosecutors with responsibility for prosecuting criminal violations in every state and territory of the United States. The NDAA serves as a nationwide, interdisciplinary resource center for training, research, technical assistance, and publications reflecting the highest standards and cutting-edge practices of the prosecutorial profession. The NDAA believes that

1

this brief will assist the Court in its consideration of the proper interpretation and application of the rules governing service of grand jury subpoenas in this case.

## FACTS AND SUMMARY OF THE ARGUMENT

The NDAA relies on the facts as presented in the Complaint.

Plaintiffs' interpretation of the use of a subpoena *duces tecum* in an interstate criminal investigation and prosecution will have a wide ranging impact on law enforcement if adopted by the Court. Law enforcement agencies across the nation have partnered with Internet Companies such as Windstream, Internet Service Providers, communications providers, and other entities keeping and maintaining records that may be required in a criminal investigation. These companies have cooperated with law enforcement to provide for an efficient manner in which to process requests for information while complying with the provisions of the governing law. Requiring statutory service of subpoenas *duces tecum* is unnecessary and would be unduly burdensome to law enforcement and would be an impediment to the administration of sheriffs and prosecutors nationwide.

**I. REQUIRING SUBPOENA RECIPIENTS TO INSIST ON PERSONAL SERVICE WOULD BE UNDULY BURDENSOME AND WOULD NOT PROVIDE ADDITIONAL PROTECTIONS**

Law enforcement and companies like Windstream have cooperated to engineer a quick, efficient, and cost effective way in which to exchange information relating to criminal investigations that law enforcement are entitled to and companies like Windstream are required by the SCA to provide. Typically that process requires an investigator to identify the information sought, determine from whom to seek the information and prepare a subpoena and send it by facsimile to the appropriate company. Upon receipt of the subpoena the company can respond to it and provide the requested information. In many cases, particularly those not involving requests for content, the response time can be minimal. A quick response time is often important, particularly where the safety of victims, potential victims, or the public at large is implicated.

The requirement of personal service of such subpoenas would add to the time and cost of obtaining information in criminal investigations for many reasons. First, the investigation would be delayed while the investigator determines in which jurisdiction the record holder is to be found and then determines the appropriate law enforcement agency to serve the subpoena. Second, the investigator must transmit the information to the appropriate law enforcement agency. Third, the investigator is bound by the time it takes that law enforcement agency to have an extraterritorial subpoena issued and effectuate its service on the

record holder.  Finally, the investigator must wait for the subpoena to be conveyed from the person on whom it is served to the person, department, division, or facility that can provide the requested information, and then to indeed provide that information.  It should be apparent that the above described process could add hours, or even days, to investigations that often involve crimes of violence and crimes against children that could be ongoing and expose the public to further victimization.  Information requested by law enforcement is often time sensitive, critical information that should not be constrained by insistence on personal service, particularly when it will not provide any further safeguards to Windstream or its subscribers.

As Plaintiffs point out in their Complaint, Windstream has 1.3 million subscribers in 23 states.  Even assuming 1% of those subscribers are the subject of an investigation where records of Windstream are sought by subpoena, 13,000 subpoenas could be sent to Windstream.  Add that to the number of subscribers of companies providing similar services to Windstream, some of whom may have significantly more subscribers and some who may have significantly less; it is apparent how the burden on law enforcement would increase dramatically were it required to effect personal service of all subpoenas.  Likewise, it is apparent how the burden on courts in jurisdictions where major internet companies (like Yahoo

or Google) are found would swell if law enforcement were required to have all of its subpoenas to these companies issued out of those courts. A fair reading of the Stored Communications Act indicates that it is designed to balance the interests of law enforcement with the privacy interests of subscribers of companies such as Windstream. Permitting service by facsimile adequately balances those needs.

## II. PLAINTIFFS LACK STANDING TO CHALLENGE THE FORM OF SERVICE OF THE SUBPOENAS

Formal service requirements for subpoenas *duces tecum* serve a dual purpose. First, they put the recipient on notice of the records or information requested, and second and perhaps more importantly, places the recipient on notice of the potential for sanctions for noncompliance. The court in *People v. Delaire*, 610 NE 2d. 1277, 1287 (Ill. App. 1993) rejected the Defendant's challenge of subpoenas directed to a telephone company on the basis of an insufficiency of service. In *DeLaire* the subpoenas were served by mail or facsimile on the telephone company by an unknown person and by the sheriff or coroner as required by Illinois statute. In rejecting the insufficiency of service argument the court reasoned that because the defendant could not be held in contempt for failure to comply with the subpoenas he lacked standing to challenge the manner of issuance of the subpoenas. *Id*. The court further reasoned that the right to insist on

formal service lies solely with the recipient and not the subject of the subpoena. *Id* at 1288.

This concept was reiterated by the court in *Mehrer v. Diagnostic Imaging Center, P.C.*, 157 SW 3d 315, 321 FN1 (Mo. App. W.D. 2005). Mehrer subpoenaed counsel for Diagnostic Imaging by facsimile and regular mail. Counsel for Diagnostic Imaging objected based on insufficient service and the subpoenas were quashed. However, the court noted that the recipient can waive the formal requirements and that only the recipient could object to the means of service. *Id*.

Finally, a similar attack on the formal service requirements was rejected in *Booker v. Dominion Virginia Power*, 2010 WL 1848474 (E.D. Va. May 7, 2010) on the basis of standing. As in *DeLaire* and *Mehrer*, Booker lacked standing to challenge the subpoenas procedurally because the right to accept service by a particular means was personal to Dominion Virginia Power. It logically follows that this is because Booker could not be subject to sanctions for noncompliance by the recipient of the subpoena.

In the case at bar Plaintiffs merely challenge the service of the subpoena by facsimile and does not allege any other defects. If Windstream waives formal service of process requirements, this is presumably done in conjunction with the

large number of subpoena requests it receives and with its obligations to respond to law enforcement under the Stored Communications Act.  To take away the personal right of Windstream and other similarly situated entities to waive the formal service requirements would impermissibly infringe upon their right to determine how they accept and respond to properly issued subpoenas in accordance with their business practices.  To give a party who is not subject to sanctions for noncompliance with a subpoena the right to insist that the recipient demand compliance with the formal service requirements would improperly inject a third party into the subpoenaing party-recipient relationship of a criminal investigation.

### III.   WINDSTREAM'S COMPLIANCE WITH THE SUBPOENAS WAS NOT VOLUNTARY

Plaintiffs' use of the term voluntary to describe Windstream's response to the subpoenas is inaccurate.  They appear to rely on letters either accompanying or preceding the subpoenas and allege that, in essence, Windstream was responding to a request for voluntary disclosure rather than the subpoenas themselves.  An entity can produce records voluntarily by a request for such records.  For purposes of this argument such a request will be termed informal.  However, a subpoena is not an informal request but rather a court order to produce such records or challenge the jurisdiction or authority of the subpoenaing party.  If such a challenge, if made, is

unsuccessful, further non-compliance is punishable by contempt. F. R. Civ. P. 45(e); *Jacobs v. State*, 157 Ga. App. 466, 467 (1981) ("failure to [comply with a subpoena duces tecum] should subject [a witness] to punishment for contempt").

Plaintiffs liken Windstream's compliance with the subpoena to voluntary compliance in that they did not challenge the subpoena. However, "[v]oluntariness is not shown by mere acquiescence to authority." *U.S. v. Swanson*, 155 F.Supp.2d 992, 1001 (C.D. Ill. 2001) (citing *Bumper v. North Carolina*, 391 U.S 543 (1968)). Windstream's compliance with the subpoenas does not fit the term voluntary in Plaintiffs' analysis is that Windstream did not produce the records in response to an informal request (or spontaneously provide the records on their own initiative) but rather they complied with a valid subpoena, fully aware of their obligation to produce the information under the SCA and the penalties for non-compliance. What Plaintiffs seem to be requiring Windstream and other similarly situated entities to do is insist upon a court order enforcing an already valid court order.

Furthermore, courts have quashed subpoenas or held the fruits of the subpoenas inadmissible if it is found that compliance with the subpoena has been involuntary as the result of coercion or was unreasonable or oppressive. *In Re Nwamu*, 421 F. Supp. 1361, 1365-66 (S.D.N.Y. 1976). The existence of coercion or unreasonableness renders compliance involuntary. However, compliance

despite the lack of coercion or unreasonableness does not equate to voluntary compliance. The court in *U.S. v. Barr*, 605 F. Supp. 114 (S.D.N.Y 1985) denied Defendant's Motion to Suppress material gained by subpoena because compliance by an agent he had authorized to accept service was deemed voluntary. Although Barr was incarcerated at the time the subpoenas were served compliance was voluntary because the agent had the opportunity to challenge the subpoenas but chose not to. *Id*. at 118-19. In other words, involuntary compliance with a subpoena is viewed less, not more, favorably by the courts. Therefore, voluntariness is not an appropriate indicator of whether subpoena compliance should be accepted by the court.

The distinction Plaintiffs attempt to draw between voluntary compliance within the terms of the Stored Communications Act and within its plain meaning and as defined by the above authority is misplaced. Plaintiffs attempt to equate Windstream's voluntary compliance with a valid court order with impermissible voluntary compliance of an informal request under the Stored Communications Act.

## CONCLUSION

Subpoenas are an integral part of the investigative and prosecutorial process to detect and prosecute all crimes, particularity those against children. Quite often

in the Internet age, as is the case here, the necessary information for those prosecutions rests with out of state companies holding information not otherwise available to law enforcement.  Windstream's practice of accepting subpoenas by facsimile at its subpoena administrator's headquarters facilitates this process in a manner that is important to the investigative needs of state law enforcement departments across the country.   Windstream and Windstream alone, as the recipient of these subpoenas, can determine how they will receive them and are obligated to respond to them according to the various applicable laws.  Windstream is in a position to challenge the subpoenas if they deem it proper.

Consequently, *amicus* NDAA urges the Court to grant Windstream's Motion for Judgment on the Pleadings.

DATED:  May 10, 2011.

By**:    s: / John G. Wilbanks, Jr.**
John G. Wilbanks, Jr.
Georgia Bar No. 758220
Assistant District Attorney
Northeastern Judicial Circuit
PO Box 1327
Dawsonville, GA  30534
(706)-344-3620
Email: jwilbanks@dawsoncounty.org

Attorney for *Amicus Curiae*
National District Attorneys Association

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that this document complies with the font and point selections set forth in Local Rule 5.1(C).  This document was prepared in Times New Roman 14 point font.

Respectfully submitted, this 10th day of May, 2011.

                                          **s: / John G. Wilbanks, Jr.**
                                          John G. Wilbanks, Jr.
                                          Georgia Bar No. 758220

## CERTIFICATE OF SERVICE

     I hereby certify that on May 10, 2011, I electronically filed BRIEF OF AMICUS CURIAE NATIONAL DISTRICT ATTORNEY'S ASSOCIATION IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Alison B. Prout
Anthony Joseph Morgese
Frank M. Lowrey, IV
Joshua A. Millican
Lisa T. Millican
Matthew C. Billips

                                          By**:   s: / John G. Wilbanks, Jr.**
                                                    John G. Wilbanks, Jr.
                                                    Georgia Bar No. 758220
                                                    Assistant District Attorney
                                                    Northeastern Judicial Circuit

Assistant District Attorney
Northeastern Judicial Circuit
PO Box 1327
Dawsonville, GA  30534
(706)-344-3620
Email: jwilbanks@dawsoncounty.org