## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| FAYELYNN SAMS and HAROLD SAMS, ) Individually, and on behalf of a class of all ) others similarly situated, ) ) Plaintiffs, ) ) vs. ) WINDSTREAM COMMUNICATIONS, ) INC., WINDSTREAM GEORGIA, LLC, ) and WINDSTREAM GEORGIA ) COMMUNICATIONS, LLC, ) ) Defendants. ) | Civil Action No.: 1:10-cv-3525-TCB |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

I.    **INTRODUCTION**

This case is about the disclosure and production of private information, without any lawful or facially valid process, simply because it is easier than requiring valid process.   It most certainly is **not**, as Defendants would mislead this Court to believe, about the method of service of an otherwise valid subpoena.[1]   This case is **not** about a Georgia state court's personal jurisdiction over Defendants nor is it about a civil subpoena.

Defendants' Motion, in focusing largely on tangential and immaterial questions of service of the subpoena and personal jurisdiction, largely ignores the substance of Plaintiffs' claims.   Whether the subpoena at issue was delivered by fax, certified mail or hand delivery is not the question.   Nor is the Georgia state court's personal jurisdiction over Defendant.   The State court grand jury subpoena at issue in this matter, and the one on which Defendant claims to rely, was issued from a Georgia court, directed to a witness out of state, and purported to compel the attendance of that witness at a grand jury proceeding.   Furthermore, Defendants did not disclose and produce information in accordance with the terms of this subpoena, and instead, Defendants voluntarily disclosed and produced information *in lieu of* complying with the terms of the subpoena.

Admittedly, it may be easier to allow law enforcement to ignore "technicalities," such as first acquiring valid and enforceable subpoenas or warrants.   It would likewise be

---

[1] Although the word subpoena and term grand jury subpoena may be used interchangeably throughout this Response, the subpoena at issue in this case is a grand jury subpoena, which is a criminal subpoena, not a civil subpoena, a distinction of the utmost importance.

easier to allow a police officer who believes he *could* get a warrant to kick down a door to do so without getting the warrant first.  These "technicalities," however, are not intended to benefit law enforcement or to make their jobs easier.  The purpose of the protections afforded by the Fourth Amendment and the analogous requirements of the Stored Communications Act, 18 U.S.C. §§ 2701-2712, (the "SCA"), is to make the invasion of privacy of individuals just difficult enough to ensure that such invasions by law enforcement are not casually undertaken without adequate basis, thought or legal process. Furthermore, even if these safeguards were waivable by Defendants, which they most certainly were not, Defendants contracted away the right to waive such jurisdictional or service defenses to process by contractually agreeing to disclose and produce Plaintiffs' personal and private information only "[t]o comply, ***when required by law***, with … civil or criminal subpoenas…".  (Doc. 1-1, Complaint, Ex. A, p. 3).

In short, Defendant disclosed and produced private information without having received a subpoena, which was valid for any purpose whatsoever.  Whether Defendant *could have* disclosed and produced the same information in response to a *valid* subpoena is not the issue presented here since there was simply no valid subpoena.  As such, there should have been no disclosure and no production. Because Defendant made the disclosure

and production without being compelled by legal process to do so, such disclosure was voluntary[2] and therefore Defendant violated the SCA.

## II.   <u>STATEMENT OF FACTS</u>

This is a class action lawsuit against Defendants for improperly and voluntarily disclosing certain personal and private user information and data of subscribers of Windstream Internet service ("Windstream Subscribers") to law enforcement without proper compliance with the compelled disclosure provisions of the SCA and Wiretap Act, and in violation of the privacy rights of Windstream Subscribers. (Doc. 1-1, Complaint, ¶¶ 1-2). The SCA sets forth a system of statutory privacy rights for customers, users and subscribers of internet service providers ("ISP") such as Defendant. (Doc. 1-1, ¶¶ 16-17).

Plaintiffs are residents of the State of Georgia and Windstream Subscribers,[3] who on or about December 8, 2008, had their personal and private user information and data voluntarily and impermissibly disclosed by Defendants to the Lowndes County, Georgia District Attorney's ("DA's") Office. (Doc. 1-1, ¶¶ 3, 5-6; Doc. 36, Pumphrey-Harp Declaration, Ex. B). Defendants maintain approximately 1.3 million internet subscribers in 23 states. (Doc. 1-1, ¶ 15). In their Privacy Statement, Defendants set forth the contractual rights of Windstream Subscribers concerning the collection, protection, use

---

[2] Voluntary as used throughout this Response and in Plaintiffs' Complaint is guided by its plain definition, which is simply "without compulsion." *See Black's Law Dictionary*, 7th Edition (1999).

[3] Although technically Plaintiff Harold Sams is the subscriber of record with Defendant, Plaintiff Fayelynn Sams also had personal and private information disclosed.

and disclosure by Defendants of personal and private user information and data. (Doc. 1-1, ¶ 18).   Defendants contracted with Windstream Subscribers' to protect their privacy as required by law and under their applicable privacy policies. (Doc. 1-1, ¶¶ 19-20).

Despite such promises, Defendants routinely and unlawfully make voluntary disclosures after accepting invalid legal process from law enforcement, as it did with Plaintiffs, where it accepted a facsimile transmission in North Carolina of a letter request for disclosure and an out-of-state grand jury subpoena issued by a state court clerk in Georgia. (Doc. 1-1, ¶ 21).   A state grand jury subpoena has no force and effect outside the territorial jurisdiction of the state of issuance and when faxed or sent out of the issuing state, that subpoena is facially invalid and unenforceable.  (Doc. 1-1, ¶ 22).

What Defendants did in this case is typical of their normal practice.  On December 4, 2008, Investigator Wendy Lain with the Lowndes County DA's Office faxed a letter from Tracy K. Chapman ("Chapman"), Assistant District Attorney, to Windstream Communications in Charlotte, North Carolina.  (Doc. 36, Pumphrey-Harp Declaration, Ex. A).   The letter was accompanied by a grand jury subpoena purporting to require "Windstream Communications" to appear and give testimony and produce documents before a Lowndes County grand jury on January 28, 2009, in Valdosta, Georgia.  (*Id*.)  The letter expressly stated that the subpoena accompanying the letter required only that a witness attend and produce records to the grand jury on January 28, 2009, in Lowndes County.  (*Id*.)   The letter also suggested that Defendants may wish to "**voluntarily**"

disclose the records in question and suggested that, as a convenience to Defendants, such production might obviate the need to respond to the subpoena. (*Id.*) (emphasis added).

The grand jury subpoena attached to Chapman's letter was facially invalid and unenforceable. (Doc. 1-1, ¶ 22).  Notwithstanding that the subpoena was both invalid and unenforceable, Defendants **voluntarily** accessed, produced and disclosed the requested personal and private user information and records of the Plaintiffs.  (Doc. 36, Pumphrey-Harp Declaration, Ex. B).  Such actions were in violation of a plain reading of the SCA and in breach of the terms of the applicable Privacy Statement.[4]

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A.   STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS

On a motion for judgment on the pleadings, as on a motion to dismiss, the court must accept all the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *See Hart v. Hodges*, 587 F 3d. 1288 (11th Cir. 2009).  So viewed, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotations omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

---

[4] Plaintiffs voluntarily dismiss the claims in Count 4 for Breach of Duty of Good Faith and Fair Dealing.

**B.    THE SCA ESTABLISHES PROTECTIONS OF SUBSCRIBER INFORMATION; IT DOES NOT EXPAND STATE COURT SUBPOENA POWER**

Congress passed the SCA in 1986 as part of the Electronic Communications Privacy Act,[5] "because the advent of the Internet presented a host of potential privacy breaches that the Fourth Amendment does not address." *Quon v. Arch Wireless Operating Co., Inc.,* 529 F.3d 892, 900 (9th Cir. 2008).   The SCA embodies Congress' belief that new federal statutes were necessary to ensure that privacy interests in new forms of electronic communication were protected by well established constitutional standards.

Thus, the SCA is meant to bridge the gap between the Fourth Amendment's more general prohibition on illegal search and seizure and the unforeseen privacy concerns borne by the Internet age.  It is intended to prevent providers of remote computing services or electronic communication services ("Providers"), like Defendants, from divulging private information to the government.  In passing the SCA, Congress did not purport to alter, add to or extend the powers of a State Court to issue a subpoena, either within its own State or in a foreign State.  Instead, the SCA's statutory framework reflects the twin goals of constraining Providers from vitiating privacy interests through voluntary disclosures while simultaneously ensuring that the constraints provide a clear mechanism for law enforcement to compel disclosure within appropriate procedural safeguards.

---

[5] Pub. L. No. 99-508, 100 Stat. 1848 (codified as amended at 18 U.S.C. §§ 2232, 2510–21, 2701–11, 3117 and 3121–26 (2000 & Supp. 2003)).

First, the SCA prohibits disclosure of information about customers and subscribers to any third party, including law enforcement. 18 U.S.C. § 2702. This prohibition ensures that Providers cannot, *via* a private search and voluntary disclosure, circumvent the Fourth Amendment. Second, the SCA imposes a series of "exceptions" to this prohibition limiting the government's right to compel Providers to disclose private information and only permits disclosure to law enforcement pursuant to specified legal process. 18 U.S.C. § 2703.

To protect the array of privacy interests of customers and subscribers, the SCA offers varying degrees of legal protection depending on the perceived importance of the privacy interest involved. Law enforcement and the Providers must apply the various legal protections to the facts of each case to determine the proper legal process necessary and proper procedure for obtaining the information sought.

## 1.     The SCA Does Not Expand the Subpoena Power of State Courts

The subpoena exception for disclosure and production of records set forth in 18 U.S.C. § 2703(c)(2), which is the subject of Defendants' Motion, does not expand the subpoena power of the issuing court.[6] There is no case which supports the proposition that the phrase "uses [a] subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena" would require disclosure in response to a subpoena which is

---

[6] The SCA was amended in October 2009. While the pertinent language remains the same now as it was in at the time of the disclosure in December 2008, Plaintiffs have not yet amended their Complaint to reflect this change.

*not* "authorized" under the law of the issuing State, especially where that subpoena would impose on the sovereign authority of another State.  Such a construction of the SCA would place a weight on the word "uses," which it is simply not capable of bearing.[7]

Should the Court accept Defendants' argument, the validity of the underlying process would not matter and any time a subpoena is "used," even if misused, facially invalid, or where it is manifestly unenforceable, the SCA would require disclosure and production of the information requested.  In other words, Defendants' argument suggests a district attorney could hand write "grand jury subpoena" on a postcard or piece of notebook paper, send it to Defendants, and Defendants would then be compelled by law to respond.  Such an inane interpretation would render the defenses specifically set forth in the SCA worthless.[8]

Moreover, were Defendant correct, the SCA would render the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings (hereinafter "Uniform Act") meaningless; would *sub silentio* expand the powers of State courts to subpoena witnesses and documents from foreign States without any concern for

---

[7] Defendants' argument that disclosure and production was permitted because of the word "use" is reminiscent of the joke in which a lawyer during trial slaps his opponent with a deposition transcript.  When the opponent (naturally) objected, the lawyer argued consent on the basis that the parties had stipulated that they could 'use' the deposition for any purpose."

[8] Defendants' argument is nonsensical. If Congress intended the validity of the subpoena to be irrelevant, then there would be no need for Congress to have included the 18 U.S.C. § 2703(e) or 18 U.S.C. § 2707(e) defenses in the SCA.

their authority as co-equal sovereigns; and would be a Congressional expansion of the subpoena powers of State courts beyond their reach under State law, which is both outside of Congress' legislative jurisdiction and contrary to the desires of such States.

> **2.    A State Court Subpoena for an Out of State Witness in a Criminal Proceeding (Grand Jury or Trial) is Not "Authorized" by State or Federal Law**

The United States of America is an association of sovereign States, under a federal government of limited powers.  Within each State's own jurisdiction and in each State's relations with every other State, each State is sovereign, subject only to the obligation to comply with federal law under the Supremacy Clause and to give full faith and credit to the laws of a sister State.  For more than a century, it has been clear that the Courts of one State may not direct their subpoena power to the residents of another State. In *Minder v. Georgia*, 183 U.S. 559 (1902), the Supreme Court found that it could not interfere with the administration of justice in the State of Georgia "because it is not within the power of the Georgia to compel the attendance of witnesses who are beyond the limits of the State...." In *Minder* the Supreme Court determined that the legislative power of the State of Georgia was powerless to make a provision, which would result in compulsory attendance of nonresident witnesses.  As a result of the desire to protect State sovereignty yet safeguard the Sixth Amendment rights of criminal defendants, in 1936, The National Conference of Commissioners on Uniform State Laws revised, approved and adopted the Uniform Act, which the States soon thereafter began adopting.

C. **THE UNIFORM ACT PROVIDES THE ONLY AUTHORITY FOR A STATE COURT TO COMPEL TESTIMONY IN A CRIMINAL PROCEEDING (GRAND JURY OR TRIAL) FROM AN OUT OF STATE WITNESS**

The Uniform Act enables prosecuting authorities (and defendants) in one State to obtain an order from a court in another State compelling a witness' appearance to testify before a grand jury or in court.  Pursuant to the Uniform Act, each state has made a reciprocal legislative commitment to other states that they will respect each other's sovereign status, while providing a means by which to obtain testimony from out of state residents.  To date, the Uniform Act, or some variation of it, has been adopted by all 50 States, the District of Columbia, Puerto Rico, and the Virgin Islands.[9]   North Carolina adopted the Uniform Act in 1937, and it is codified at North Carolina G.S. §§ 15A-811 to 15A-816. *See also State v. Tindall*, 294 N.C. 689, 242 S.E. 2d 806 (N.C. 1978).   Georgia adopted the Uniform Act in 1976, and it is codified at O.C.G.A. §§ 24-10-90 to 24-10-97. *See also Mafnas v. State*, 149 Ga.App. 286, 254 S.E.2d 409 (Ga.App. 1979).

1. **The Uniform Act Provides Both Procedural and Substantive Safeguards for the Protection of the Important Sovereignty Interests of the States**

The Uniform Act provides for both procedural and substantive safeguards, which the various States adopting the Act have interposed for the protection of these important sovereignty interests, while allowing diligent prosecuting authorities (and defendants) to

---

[9] *See* Exhibit A attached hereto for a complete list of party States to the Uniform Act and their corresponding State statutes.

obtain necessary witness testimony.  The Uniform Act does not permit a Georgia state court to simply issue a grand jury subpoena to an out of state witness and compel compliance therewith, any more than it would permit an out of state court to compel a Georgia witness to comply with an out of state grand jury subpoena.  O.C.G.A. § 24-10-92; *Mafnas*, 149 Ga.App. 286, 254 S.E.2d 409.

Instead, under the Uniform Act, each State reserves for itself the right to determine whether and under what conditions its Courts will honor requests from Courts of another State.  In the instant case, to compel the attendance of an out of state witness to appear and testify in a criminal proceeding in Georgia, a judge in Georgia must issue a certificate under the seal of the court that makes certain findings under the Uniform Act, including, but not limited to, that the out of state witness who is being subpoenaed is "a material witness" in that proceeding.  O.C.G.A. § 24-10-94(a).  That certification of the required findings from the Georgia judge would then be presented to a judge in a court of record in North Carolina where the witness is located for consideration by that judge under the reciprocal provisions of the Uniform Act.  *Id.* If appropriate, the North Carolina judge shall issue a summons (subpoena, order or other notice requiring the witness's appearance), with a copy of the Georgia court certificate attached, directing the witness to attend and testify in Georgia at a time and place specified in the summons.  North Carolina G.S. § 15A-812.

These protections established by the Uniform Act are not merely for the benefit of the out of state witness; they also protect the sovereign dignity of the State itself; and as

applicable in the instant matter, protect the privacy of the Windstream Subscribers as set forth in the SCA by preventing the voluntary disclosure and production of personal and private information to law enforcement.

> **2.    The Subpoena Violated the Uniform Act and Was Facially Invalid, as It Was Issued to Defendants in North Carolina and Required the Attendance of a Witness in Georgia**

The facts of the instant matter are undisputed. The Uniform Act was not complied with, and instead, the Lowndes County DA's Office faxed a grand jury subpoena issued by a Georgia state court to Defendants in North Carolina. That subpoena was facially invalid as it purported to compel an out of state, unnamed representative of Defendants in North Carolina to appear and produce evidence before a grand jury in Lowndes County, Georgia on January 28, 2009. There was absolutely no effort by the Lowndes County DA's Office to comply with the Uniform Act or to respect the sovereignty of the State of North Carolina. That subpoena, upon which Defendants rest their entire defense in this case, was in direct contravention of the Uniform Act and therefore inadequate, unenforceable, facially invalid and without legal effect.

> **3.    Georgia Does Not Permit Free-Standing Interstate Subpoenas *Duces Tecum***

To the extent that Defendants argue that the subpoena was only a subpoena *duces tecum* not requiring the appearance of a witness to testify before the grand jury in Lowndes County, Georgia, the subpoena would be facially invalid for a different reason: Georgia law does not authorize stand alone interstate subpoenas *duces tecum*. Although the

Uniform Act authorizes the issuance of a subpoena for the production of documents, it does not support a stand-alone request for production, or subpoena *duces tecum*, for out-of-state documents.   *Davenport v. State*, 303 Ga. App. 401, 693 S.E.2d 510 (2010). Rather, a request for documents under the Act must be made ancillary to a request for testimony from an out-of-state witness.  *Yeary v. State*, 302 Ga. App. 535, 690 S.E.2d 901 (2010).   Under Georgia law, standalone subpoenas *duces tecum* **cannot** be issued to compel the production of documents from an out-of-state jurisdiction.   Thus, any claim that the subpoena in the instant matter *was* a standalone subpoena *duces tecum* must fail.

### 4.    Defendants Did Not and Could Not Have Relied on a Hypothetical Subpoena Never Actually Issued

Apparently recognizing that it is impossible to claim that a grand jury subpoena issued in Georgia could compel a North Carolina witness to appear before a Georgia grand jury, Defendants argue that the state court *could have* issued a subpoena directed to Defendants to be served on its registered agent in Georgia, which *could have* compelled Defendants to disclose and produce documents from North Carolina or Arkansas to Georgia.  This argument is irrelevant, as the SCA does not provide a defense premised on the notion that a party *might have* or *could have* been required to disclose or produce information pursuant to a subpoena that was never issued.[10]

---

[10] The Statutory protections and their procedural safeguards of the SCA, the Wiretap Act and the Uniform Act are not only additional protections preventing the misuse of subpoenas, they are an important fortification protecting the sovereignty of each State.

### a. The Hypothetical Subpoena Requesting Out of State Witnesses to Bring Out of State Documents Would Still Have Been Subject to the Uniform Act

Defendants also ignore the fact that this hypothetical subpoena – even if issued by a Georgia state court and directed to a representative of Defendants in Georgia or its registered agent -- would still have required Defendants to produce an out of state witness, to bring out of state documents, and to attend the grand jury proceedings in Lowndes County, Georgia.   Defendants mistakenly cite 47 C.F.R. §1.20003, part of the Communications Assistance for Law Enforcement Act (CALEA), for the proposition that federal law requires ISPs to appoint once senior officer or employee to serve as a subpoena administrator.   The actual purpose of CALEA is to "ensure that any interception of communications or access to call-identifying information… can be activated only in accordance with appropriate legal authorization… and with the affirmative intervention of an individual officer or employee of the carrier acting in accordance with regulations prescribed by the Commission."  47 C.F.R. § 1.20000. Simply put, CALEA only applies to the interception of wire, oral or electronic communications, which must be judicially authorized through warrants or court orders, not simply by a subpoena like the state grand jury subpoena in the instant matter.  *See* 18 U.S.C. 2510 *et seq.*

---

While Defendants argument seemingly encompasses a "no harm no foul" sentiment, we are a society of laws, the violation of which have consequences.

Even though there is clearly no actual legal authority to support Defendants attempt at an end-around the Uniform Act, it cites *Security Mortg. Investors v. Hicks*, 1975 U.S. Dist. LEXIS 16769 (N.D. Ga. Dec. 30, 1975), for the doubtful proposition that such a hypothetical subpoena would have been effective.  *Hicks*, however, stands for the contrary proposition and relies on binding precedent which decimates Defendants' contention.  In *Hicks*, a case involving a federal civil subpoena *duces tecum* issued under Rule 45 of the Federal Rules of Civil Procedure, the Court held that even a federal civil subpoena could not be enforced where it sought records which were outside the District.  In *Hicks* the Court relied on binding precedent from the former Fifth Circuit, *Cates v. LTV Aerospace Corp.*, 480 F.2d 620 (5th Cir. 1973).  In *Cates*, the Court held that even a United States District Court had no power to compel a corporation outside of Georgia to produce a witness or documents in Georgia.  The Court held there was no provision of the Federal Rules, which would permit even a federal court to compel a corporate representative to travel outside the limits imposed by Rule 45.  The Court further held that even a federal civil subpoena could not order production of records "in the custody and control of a non-party located in a foreign judicial district."  *Cates*, at 623-624.

Similarly to *Cates*, although it involved a civil subpoena not a grand jury subpoena, the subpoena at issue in the instant matter is not merely a subpoena *duces tecum*.  The subpoena in this case clearly required the appearance of a witness, informing Windstream that "You are required to be and <u>appear</u>… and <u>to bring with you into said Grand Jury</u> certain evidence in a certain case…" (Doc. 36, Pumphrey-Harp Declaration, Ex. A).

- 15 -

Additionally, the letter accompanying the subpoena – in the words of the Lowndes County, Georgia DA's Office -- **only required [Windstream] to appear and produce the evidence directly to the Grand Jury as commanded by the subpoena.** *Id*.  As such, it is clear the instant subpoena required the attendance of a witness, not simply documents.

**b.     Defendants' End-Around Argument Shows a Misunderstanding of the Difference Between a Criminal Grand Jury and Civil Subpoena**

Defendants have also offered distinguishable and inapplicable authority for the proposition that a Georgia state court may issue a grand jury subpoena to a foreign corporation to compel production of an out of state witness without complying with the Uniform Act.[11]  In making this argument, Defendants evidence misunderstanding of the important distinction between a state court grand jury subpoena, which is a criminal subpoena, and a civil subpoena, when Defendants argue, "Defendants could not have resisted the subpoena on the ground that it seeks records maintained in North Carolina, Arkansas and perhaps elsewhere, anymore than it could resist discovery in this action on that ground." (Doc. 33, p. 23).  In the criminal context, this argument simply fails.

---

[11] *Hicks* involves a federal civil subpoena duces tecum issued pursuant to Fed. R. Civ. P. 45; *In re Marc Rich & Co., A.G.*, 707 F.2d 663 (2nd Cir. 1983) involves a federal grand jury subpoena sent to an out of country witness (a Swiss corporation); *Valdes v. Swift Transp. Co.*, 292 F. Supp 2d 524 (S.D.N.Y 2003) is a civil employment discrimination case interpreting a New York state statute to authorize an arbitrator to issue subpoenas; *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522 (1987) involved a federal civil subpoena in an international personal injury action and the interpretation of the Hague Convention as being a permissive supplement for, not a replace of, other means of obtaining evidence located abroad; *Standard Fruit & S. S. Co. v. Waterfront Commission of New York Harbor*, 371 N.E.2d 453 (N.Y. 1977) involved a state civil subpoena *duces tecum* at a civil hearing before the Waterfront Commission.

c.   **Defendant's Attempt to Analogize a State Court Grand Jury Subpoena to a Federal Search Warrant Issued Under Fed. R. Crim. P. 41 is an Impermissible Leap**

In a final attempt to excuse its violation of the SCA, Defendants attempt to analogize the state court grand jury subpoena at issue in this matter to a federal search warrant issued under Fed. R. Crim. P. 41 by quoting excerpts of dicta from *In re Search of Yahoo, Inc.*, 2007 WL 1539971  (D. Ariz. May 21, 2007), which is one of a very few federal cases interpreting the SCA (specifically 18 U.S.C. § 2703) to authorize a federal district court to issue out-of-district warrants for the seizure of electronically-stored communications. *Id*. at *7.[12]  Defendants attempted analogy unjustifiably asks this Court to equate the due process and procedural protections of a probable cause determination made during the issuance of a federal search warrant to that of a state court clerk signing printing the name of a judge on a state grand jury subpoena typed by the District Attorney's office.

Moreover, Defendants indirectly express concerns about state courts being flooded with certifications from other states under the Uniform Act.   In doing so, Defendants ignore that while California, Minnesota and Virginia (the three states where most ISPs are

---

[12] *See also United States v. Berkos*, 543 F.3d 392, 396-98 (7th Cir. 2008); *In re Search Warrant*, 2005 WL 3844032, at *6 (M.D. Fla. Dec. 23, 2005); *United States v. Kernell,* 2010 WL 1408437, at *1 (E.D. Tenn. Apr. 2, 2010), Report and Recommendation adopted by, 2010 WL 1491861 (April 13, 2010); *In re Application by the United States of Am. for a Search Warrant,* 665 F. Supp. 2d 1210 (D. Or. 2009).

located) each have laws that require ISPs incorporated[13] in those states to disclose and produce information and records in response to out of state warrants, not one of those three states have modified their versions of the Uniform Act in a manner that would alleviate or address Defendants' alleged concerns.

In the instant matter the Uniform Act was not complied with, and as such, the subpoena was unauthorized, was facially invalid and was without legal effect. Therefore any disclosure and production by Defendants allegedly in response thereto was not a compelled response, but was merely voluntary and in violation of the SCA.

### D.    THE SCA'S DEFENSES ARE NOT AVAILABLE TO DEFENDANTS

The SCA provides two affirmative defenses to liability, neither of which affords protection to Defendants.   First, the SCA requires Defendants to show that they "provid(ed) information, facilities, or assistance *in accordance with the terms of* a court order, warrant, subpoena, statutory authorization, or certification *under this chapter"*  18 U.S.C. § 2701, *et seq.* (emphasis added).  At bare minimum, 18 U.S.C. § 2703(e) requires a subpoena which is authorized by State or federal law, which seeks to compel a Provider to disclose information.[14]   Since Defendants did not act in accordance with the terms of the grand jury subpoena issued here, Defendants cannot rely on this defense.

---

[13]  Strangely, although the vast majority of ISPs maintain their principal places of business in those states, most are still incorporated in Delaware and do not actually receive the benefits of those statutes.

[14] The existence of the 18 U.S.C. § 2707(e) "good faith" defense itself demonstrates that the 18 U.S.C. § 2703(e) defense requires valid process; after all, what need would there be

Second, 18 U.S.C. § 2707(e) permits a defendant to invoke a "good faith" defense, containing both a subjective component and an objective component.  *Freedman v. Am. Online, Inc.*, 325 F. Supp. 2d 638 (E.D. Va. 2004) (citing *Jacobson v Rose*, 592 F.2d 515, 522-24 (9th Cir 1978)).  The "good faith" defense requires Defendants to show that they both believed they were acting pursuant to a valid and properly served grand jury subpoena and that the belief was reasonable based on the specific circumstances (*i.e.,* the extent of defendant's knowledge about the legality of the process).  *Freedman*, 325 F. Supp. 2d at 648.[15]

Relying on factual assertions contrary to the pleadings, Defendants claim an entitlement to what they call "immunity" from liability under the SCA for their voluntary disclosures.  However, neither the word "immunity" nor any derivation thereof appears in the text of the SCA, and its use represents a mischaracterization of the statute by Defendants.  To the contrary, both 18 U.S.C. § 2703(e) and 18 U.S.C. § 2707(e) are fact-based affirmative defenses, which Defendants bear the burden of proving.  *United States v. Councilman*, 418 F.3d 67, 83 (1st Cir. 2005) ("We may neither expand the good faith defense's scope, nor convert it from a fact-based affirmative defense to a basis for dismissing an indictment on legal grounds.")

---

for a "good faith" defense if the validity of the legal process did not matter?  *See Freedman*, 325 F. Supp. 2d at 646.

[15] Similarly, pursuant to disclosures under the Wiretap Act, 18 U.S.C. § 2520(d) provides a good faith defense that is parallel to that under 18 U.S.C. § 2707(e).

1.   **The 18 U.S.C. § 2703(e) Defense Requires the Disclosure be Made in Accordance with the Terms of a Subpoena Under the SCA**

The 18 U.S.C. § 2703(e) defense ("2703(e) defense") is available to Defendants *only* where they can show that they provided information in accordance with subpoena's terms.  As shown above, Defendants cannot satisfy this burden, and as such, the § 2703(e) defense is inapplicable.

a.   **Defendants' Voluntary Disclosure and Production Prevent Them From Asserting the 2703(e) Defense**

On its face, the terms of the subpoena in question required Defendants to send a witness to appear before the Grand Jury in Lowndes County, Georgia.   (Doc. 36, Pumphrey-Harp Declarations, Exs. A and B).  The subpoenas clearly indicated: "You are required to be and appear… and *to bring with you* into said Grand Jury certain evidence in a certain case…" (Id.)   Moreover, as detailed *supra*, the letters transmitting those subpoenas clearly stated that Defendants may "**voluntarily provide copies**" and that they were "**only required to appear and produce the evidence directly to the Grand Jury as commanded by the subpoena.**" (*Id*.) (emphasis in original).

Defendants did not "appear and produce evidence directly to the Grand Jury as commanded by the subpoena."   (Doc. 33, pp. 5-6).   Instead, Defendants **voluntarily** produced documents *in lieu of* complying with the actual terms of the subpoena.   (*Id*.). Thus, Defendants' actions were *not* in accordance with the terms of a court order, warrant, subpoena, statutory authorization, or certification under the SCA.

b.      **Defendants Have No Legal Support for a 2703(e) Defense**

Although Defendants actually fail to cite a single case to support their claim to the 2703(e) defense, in an attempt to craft a definition of "voluntary" that is suitable for their argument, Defendants tangentially address that defense by citing *Freedman v. Am. Online, Inc.*, 303 F. Supp. 2d 121, 128 (D. Conn. 2004) (hereinafter "*Connecticut Freedman*"). However, Defendants' citation to *Connecticut Freedman* is egregiously out of context and entirely inapplicable to this case.  That decision did not relate to the § 2703(e) defense, but instead referenced the § 2702(c)(4) "exigent circumstances" defense, which is not present in the instant matter.[16]

c.      **The 2703(e) Defense Does Not Include an "It is More Convenient or "It is Easier" Defense**

Defendants' desire to mollify law enforcement at the expense of the privacy of Windstream Subscribers is not a basis to avoid liability.  Neither the SCA nor the Wiretap Act provide a defense based on a claim that it is more convenient or easier to produce documents voluntarily, than it is to produce documents only as required by a valid and properly issued warrant or subpoena.  It is undoubtedly more convenient and much easier for local law enforcement to send a letter – or even to get a subpoena issued from its local grand jury and fax it to an out of state witness – than to actually go through the

---

[16] A subsequent decision in that same case after the case was transferred to the District Court for the Eastern District of Virginia (*Freedman v. Am. Online, Inc.*, 325 F. Supp. 2d 638 (E.D. Va. 2004))  is the seminal case describing the 18 U.S.C. § 2707(e) good faith defense as discussed both *supra* and *infra*.

inconvenience of complying with the legal processes required under the Uniform Act.  It is undoubtedly more convenient and easier for an ISP to fax information back without worrying about whether it is producing information "in accordance with the terms" of the subpoena.   However, these choices have consequences.   By choosing their own convenience and easy and the convenience and ease of law enforcement over the privacy of the Plaintiffs, Defendants prevented themselves from asserting the § 2703(e) defense, because the only question under which is whether Defendants produced the information "in accordance with the terms" of a subpoena, which was authorized by State or federal law.  They did not.

## 2.   The 18 U.S.C. § 2707(e) Good Faith Defense is not Available to Windstream

The   18 U.S.C. § 2707(e) "good faith" defense ("2707(e) "good faith" defense") requires Defendants to show: "(1) that [it] had a subjective good faith belief that [it] acted legally pursuant to a court order, [warrant or a subpoena]; and (2) that this belief was reasonable." *Freedman*, 303 F. Supp. 2d at 648.  Defendants' claim to the 2707(e) "good faith" defense is destroyed both by the patent invalidity of the subpoena in question and the cover letter which accompanied it.  The subpoena, by purporting to require production of a witness and documents in North Carolina to appear in Georgia, was facially invalid as discussed *supra*.  The cover letter also made it clear that production of information in any means other than by appearing in Georgia would be a *voluntary act* and would not constitute compliance with the subpoena.  The facts in this matter are clear.  Given: (a) the

existence and applicability of the Uniform Act, and (b) the well settled law as to the invalidity of a free standing out-of-state subpoena *duces tecum*, it is unreasonable for Defendants to claim they did not know the subpoena was invalid and unenforceable.

In an attempt to support their claim to an 18 U.S.C. § 2707(e) good faith defense, Defendants cites four cases, all of which are easily distinguishable.  This case deals with a Georgia state court grand jury subpoena purporting to compel the Defendants in North Carolina to disclose information.  None of the cases cited by Defendants involve a state court subpoena, state search warrant or state court order.

Defendants cites *United States v. Councilman*, 418 F.3d 67, 83-84 (1st Cir. 2005), without noting that *Councilman* was a criminal prosecution for a violation of the Wiretap Act.  In discussing the good faith defense the 1st Circuit stated: "We may neither expand the good faith defense's scope, nor convert it from a fact-based affirmative defense to a basis for dismissing an indictment on legal grounds."  The *Councilman* case – which does not address any of the other issues presented in the instant matter -- provides no support for Defendants' contentions here.

In *McReady v. eBay, Inc.*, 453 F.3d 882 (7th Cir. 2006), the Seventh Circuit addressed the 2707(e) good faith defense concerning a federal civil subpoena.  There, unlike the state grand jury subpoena in the instant matter, the subpoena in question was a civil subpoena issued by a federal district court on behalf of a defendant in a pending civil lawsuit, seeking information about a party opponent which related to the case, included the title of the action and the case number, and quoted on its face the entirety of Fed. R. Civ. P

45(c) and (d), and was served on the opposing party. *Id.* at 892. The *McReady* court was careful to note that "[n]othing else gives any indication of irregularity sufficient to put eBay on notice that the subpoena was 'phony.'" *Id.*

The same cannot be said here. First, Defendants did not produce documents and information in response to the subpoena; they actually produced such information and documents in response to a request that they ***voluntarily*** make such production in order to avoid complying with the subpoena. Second, the subpoena was facially invalid as it was issued by a state court in Georgia and purported to require a North Carolina witnesses to appear and produce documents in Georgia. Neither Defendants' reliance on facsimile coversheets from the District Attorney's office, nor their contention the fax header indicated "DISTRICT ATTY OFFICE," nor their contention that Defendants' employee Lethlyn Pumphrey-Harp verified the legitimacy of the subpoena by telephone, change these essential facts.

*Bansal v. Server Beach*, 285 Fed. Appx. 890 (3d Cir. 2008) and *Bansal v. Mirosoft Hotmail*, 267 Fed. Appx. 184 (3d Cir. 2008) are related cases, brought pro se by an incarcerated inmate, and shed absolutely no light on any issue in this case as in those cases there was no question about the validity of the federal subpoenas, federal warrants or federal orders pursuant to which the information in question was produced. Specifically, in *Bansal v. Microsoft Hotmail*, both the District Court and the Third Circuit Court of Appeals found that pursuant to 18 U.S.C. § 2701(c), Microsoft Hotmail was excepted from liability for accessing Mr. Bansal's email account because Microsoft Hotmail "is the

communications service provider for his email account." *Id.* at 185*; Bansal v. Microsoft Hotmail*, No. 2:06-cv-04029-NS, Doc. 8 (Order) at ¶ j (E.D. Pa. Nov. 5, 2007).  *Bansal v. Microsoft Hotmail* is further distinguishable because the District Court and the Third Circuit Court of Appeals both found that Microsoft Hotmail had an additional defense pursuant to 18 U.S.C. 2707(e) because the disclosures to the government were in compliance with a federal court *order*.[17]  *Bansal v. Microsoft Hotmail*, 267 Fed. Appx. at 185; *Bansal v. Microsoft Hotmail*, No. 2:06-cv-04029-NS, Doc. 8 (Order) at ¶ k (E.D. Pa. Nov. 5, 2007).  Finally, the District Court dismissed Bansal's SCA claim as frivolous and the Third Circuit Court of Appeals dismissed Bansal's appeal as meritless pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), dealing specifically with civil actions by a *pro se* litigant filed *in forma pauperis,* not the 18 U.S.C. § 2707(e) good faith defense.  *Bansal v. Microsoft Hotmail*, 267 Fed. Appx. at 185; *Bansal v. Microsoft Hotmail*, No. 2:06-cv-04029-NS, Doc. 8 (Order) at p. 3, ¶ 4 (E.D. Pa. Nov. 5, 2007).  In addition, in *Bansal v. Server Beach*, where Bansal also sued Microsoft, the District Court and Third Circuit Court of Appeals made the same findings and dismissed the claim against Microsoft and affirmed the dismissal for the same reasons as in *Bansal v. Microsoft Hotmail. See Bansal v. Server*

---

[17]   In fact, Microsoft Hotmail was actually served with at least one federal grand jury subpoena, five federal search warrants and two federal court orders requesting disclosure of the emails in Bansal's Hotmail account.  *Bansal v. Microsoft Hotmail*, No. 2:06-cv-04029-NS, Doc. 1 (Complaint), pp. 2-3) (E.D. Pa. Sept. 16, 2006); *Bansal v. Server Beach*, No. 2:06-cv-03932-NS, Doc. 13 (Microsoft's MTD) at 4 (E.D. Pa. Feb. 23, 2007).

*Beach*, 285 Fed. Appx. at 892; *Bansal v. Server Beach et al.*, No. 2:06-cv-03932-NS, Doc. 27 (Order) at p. 2, ¶¶ 6, 7, and at p. 3, ¶ 3 (E.D. Pa. Nov. 1, 2007).

In this instant matter, Plaintiffs agree with Defendants that disclosure and production of information in accordance with the terms of and pursuant to a valid – or even facially valid – grand jury subpoena authorized by State or federal law would allow Defendants to assert either the 2703(e) defense or the 18 U.S.C. § 2707(e) good faith defense.  The problem for Defendants is that none of that occurred in this case, as the flaws in the subpoena were apparent from its face, and Defendants did not actually rely on the subpoena in making the disclosure and production at issue, as it disclosed and produced the information in an uncompelled, voluntary manner in an apparently successful effort to avoid the inconvenience of actually complying with the terms of the subpoena that cslled for a witness to appear in Lowndes Count, Georgia with documents  (assuming the subpoena was valid, which it was not).   As a result, neither the 2703(e) defense nor the 2707(e) "good faith" defense is available to Defendants.

## E.   PLAINTIFFS HAVE STANDING TO CONTEST DEFENDANTS' ACTIONS

Defendants repeatedly ignore Plaintiffs' allegations that Defendants voluntarily disclosed personal and private user information and data in violation of the SCA.  Instead of addressing Plaintiffs' actual allegations, Defendants seek to misdirect this Court by arguing that Plaintiffs' claims relate solely to the method of service of the subpoena.  This is incorrect.  Plaintiffs' claims do not depend on the method of service, but rather arise

from the fact that Defendants produced information voluntarily, after receiving a facially invalid subpoena.  As set forth in detail *supra*, in this matter, Defendants failed to require valid process or even to act "in accordance with the terms" of the invalid process.

Defendants cite *Booker v. Dominion Virginia Power*, No. 3:09-cv-759, 2010 WL 1848474 (E.D. Va. May 7, 2010) in support of both their lack of standing argument as well as tangentially for their claim to a 2703(e) defense. In claiming *Booker* stands for the proposition that Plaintiffs lack standing to challenge the service of the subpoenas in the instant matter, Defendants fail to mention that *Booker* found "there is no express or implied private right of action to challenge **administrative subpoenas under 21 U.S.C. § 876**." *Booker* at *5(emphasis added), something that is distinguishable from and completely irrelevant to the case at bar, in which there is an express private right of action under the SCA. 18 U.S.C. § 2707.

Moreover, in *Booker*, unlike the state grand jury subpoena in the instant matter, the subpoena in question was a federal administrative subpoena issued by the Department of Justice on behalf of the DEA.  As Defendants properly admit, *Booker* did not involve claims under the SCA.  In merely citing part of the *Booker* court's opinion out of context and mischaracterizing its holding, Defendants fail to mention that in *Booker* the plaintiff agreed to dismiss its claims against TDS Telecommunications Corporation and in fact submitted an order of dismissal to the state court, which was granted, but improperly, as the state court lost jurisdiction over the matter as the case had already been removed to federal court.  *Booker* at *7.  Moreover, the *Booker* court made no factual determinations

concerning a possible 18 U.S.C. § 2703(e) defense as it was unnecessary to do so.

While Plaintiffs cannot contest the disclosure and production at the time of the subpoena (being they were unaware of it), they clearly have standing to pursue such claims regarding that disclosure and production now by virtue of the privacy protections afforded them by the SCA and Wiretap Act.     It is clear that if Plaintiffs had received notice of the subpoena, they would have had standing to seek to quash it.  *Chasten v. Franklin*, 2010 U.S. Dist. LEXIS 113284 (N.D. Cal. 2010).[18]  Thus, Plaintiffs clearly have standing to bring these claims against Defendants.

### F.     PLAINTIFFS' CONTRACT CLAIMS SHOULD NOT BE DISMISSED AND FURTHER SUPPORT PLAINTIFFS' STATUTORY CLAIMS

Defendants ask this Court to dismiss Plaintiffs' claims for breach of contract, asserting that these claims are entirely dependent on Plaintiffs' SCA claims.  However, the reverse is true, as Plaintiffs' contract claim defeats Defendants' contentions that Defendants were entitled to waive service of process and waive personal jurisdiction and produce information where they were not required or compelled to do so by valid process.

### 1.     The Windstream Privacy Statement is the Controlling Contract

The Windstream Privacy Statement, which is attached as Exhibit A to Plaintiffs' Complaint, at page 3, Section E, and attached hereto for the Court's convenience as

---

[18] S*ee also Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965 (C.D. Cal.  2010); *J.T. Shannon Lumber Co., Inc. v. Gilco Limber, Inc.,* Civil Action No. 2:07-CV-119, 2008 WL 3833216 (N.D.Miss. Aug. 14, 2008); *Hone v. Presidente U.S.A. Inc.,* No. 5:08-mc-80071-JF, 2008 U.S. Dist. LEXIS 55722, *4 (N.D.Cal. July 21, 2008).

Exhibit B, identifies the terms under which Defendants will produce information such as that at issue here. It states, in relevant part, that Defendants will produce such information "[t]o comply, **when required by law**, with … civil or criminal subpoenas…"

In the Motion for Judgment on the Pleadings, Defendants readily admit and in fact spend several pages arguing that it is not required by law to waive personal service.  It asserts that it is entitled to determine for itself whether to waive personal jurisdiction. Defendant does not (but should) admit that it was not "required by law" to comply with a facially invalid subpoena by faxing information to the Lowndes County DA's Office after being told that such action was purely voluntary.

### 2.   In the Privacy Statement, Defendants Contracted Away Their Right to Waive Personal Jurisdiction or Service

While it may be true that a party *can* waive its own defenses to personal service or jurisdiction (although this authority is irrelevant here), there is nothing in the law which prohibits a party from contracting away that right.  *Beverage Management Solutions v. Yankee Spirits*, 218 Ga. App. 95, 460 S.E.2d 564 (Ga. App. 1995).  As the Privacy Statement clearly demonstrates, Defendants did enter into such a contract with Plaintiffs. Therein, Defendants agreed that they would *only* produce information in compliance with a "civil or criminal subpoena" where **required by law** to do so, which they clearly were not in this matter.  Defendants make no contrary argument.  In fact, Defendants do not even cite to the terms of their very own Privacy Statement, which is a binding contract.  As such, there is no basis for dismissing Plaintiffs' contract claims.

### G.    PLAINTIFFS' CLAIMS UNDER THE WIRETAP ACT SUCCEED

Plaintiffs' claims under the Wiretap Act succeed for the same reasons and based on the same authority, which support their claims under the SCA.   Defendants make no contrary argument, other than to assert – based on matters outside the pleadings – that it did not actually produce or intercept "content."   Since the Court may not consider this contention and it is contrary to the allegations of the Complaint, it should be rejected.

## IV.   <u>CONCLUSION</u>

For the aforementioned reasons, Plaintiffs respectfully requests this Court DENY Defendants' Motion to for Judgment on the Pleadings.

This the 16th day of May, 2011.

By:    <u>s/ Joshua A. Millican</u>

Joshua A. Millican
Georgia Bar No. 508998
LAW OFFICE OF JOSHUA A.
MILLICAN, P.C.
44 Broad Street, N.W., Suite 607
Atlanta, Georgia 30303
Telephone: (404) 522-1152
Facsimile: (404) 522-1133
joshua.millican@lawofficepc.com

Matthew C. Billips
Georgia Bar No. 057100
BILLIPS & BENJAMIN LLP
3101 Towercreek Parkway
Suite 190
Atlanta, Georgia 30339
Telephone: (770) 859-0751
Facsimile: (770) 859-0752
billips@bandblawyers.com

Lisa T. Millican
Georgia Bar No. 309046
GREENFIELD MILLICAN P.C.
44 Broad Street N.W., Suite 607
Atlanta, GA 30303
Telephone: (404) 522-1122
Facsimile: (404) 522-1133
lisa.millican@lawofficepc.com

Anthony J. Morgese
Georgia Bar No. 523430
MORGESE LAW FIRM
3233 S. Cherokee Lane, Bldg. 1000
Woodstock, GA 30188
Telephone: (770) 517-6711
Facsimile: (770) 517-6711
lawpair@aol.com

**Counsel for Plaintiffs and the Proposed Class**

## <u>CERTIFICATE OF COMPLIANCE AND</u><br><u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that this day, I electronically filed the foregoing, **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**, which complies with the type and format requirements of L.R. 5.1(B) and 7.1(D), Local Rules, N.D. Ga., with the Clerk of Court in the United States District Court, for the Northern District of Georgia, Atlanta Division, using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

BONDURANT, MIXON & ELMORE, LLP
Frank M. Lowrey, IV., Esq.
Alison B. Prout, Esq.

This the 16th day of May, 2011.

By:   s/ Joshua A. Millican
         Joshua A. Millican
         Georgia Bar No. 508998
         LAW OFFICE OF JOSHUA A. MILLICAN, P.C.
         The Grant Building, Suite 607
         44 Broad Street, N.W.
         Atlanta, Georgia 30303
         Telephone: (404) 522-1152
         Facsimile: (404) 522-1133
         joshua.millican@lawofficepc.com