# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

FAYELYNN SAMS and HAROLD )
SAMS, individually, and on behalf of )
class of all others similarly situated, )
                                   )
     Plaintiffs, )
                                     )
v. )          **CIVIL ACTION**
                                     )
WINDSTREAM COMMUNICATIONS, )    **FILE NO. 1:10CV3525-TCB**
INC., WINDSTREAM GEORGIA, LLC, )
and WINDSTREAM GEORGIA )
COMMUNICATIONS, LLC, )
                                     )
     Defendants. )

## DEFENDANTS' REPLY IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS

Frank M. Lowrey IV
Georgia Bar No. 410310
Alison B. Prout
Georgia Bar No. 141666

**BONDURANT, MIXSON & ELMORE, LLP**
One Atlantic Center, Suite 3900
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

880082.1

## INTRODUCTION

Plaintiffs' entire case appears to hinge on their challenge to the "validity" of the subpoena served on Windstream, even though no section of the SCA actually uses that term and Plaintiffs do not cite a single case interpreting, defining or applying the term, whether in the context of the SCA or otherwise.

Moreover, having conceded that service of process is an individual right that can be waived,[1] Plaintiffs base their "validity" challenge exclusively on the premise that the subpoena failed to comply with the Uniform Act to Secure an Out of State Witness ("Uniform Act") because it issued from a Georgia court but purportedly demanded the appearance of a North Carolina witness.  Plaintiffs mistakenly assume both that Windstream and its witnesses are located in North Carolina, not Georgia, and that the subpoena commands the appearance of a specific witness from North Carolina.  Neither assumption is true.  The Uniform Act does not apply here, and there was nothing "facially invalid" about the subpoena.

Plaintiffs' attempt to make this case about an individual's right to privacy is equally flawed.  This case implicates neither the Fourth Amendment nor invasion of privacy concerns, and Plaintiffs' glib comparison of this case to "allow[ing] a police officer who believes he *could* get a warrant to kick down a door to do so without

---

[1] *See* 3/3/11 Transcript at 9 (Plaintiffs' counsel stated, "I don't disagree with the fact that generally a company could waive service or its -- they could accept service however they want.").

getting the warrant first," Plaintiffs' Response (Dkt. 45) at 2, is wildly off base.  Even if the district attorney had done as Plaintiffs suggest and obtained a subpoena issued out of a North Carolina court, Windstream would have disclosed the exact same information, and Plaintiffs would have had no right to receive notice and thus no right or opportunity to move to quash the subpoena.  That is because the SCA expressly provides that notice to the subscriber is ***not*** required when responding to a subpoena seeking subscriber account information.  18 U.S.C. § 2703(c)(3).  The outcome of this lawsuit will have no impact whatsoever on any individuals' right to privacy.

Finally, this case is not about the dictionary definition (nor Plaintiffs' own self-serving definition) of "voluntariness."  Plaintiffs have no response to the fact that this term appears nowhere in the relevant provisions of the SCA, and thus is not a relevant concept for this case.  Nor do they respond to the obvious point that Windstream did not spontaneously and freely send Harold Sams's account information to the Lowndes County district attorney.  Rather it did so in response to a grand jury subpoena issued by a court of competent jurisdiction with the power to compel Windstream to act.

Simply, this case is about whether Windstream complied with its duty under the SCA to respond to grand jury subpoenas, and whether it is entitled to the multi-layered protections the statute creates for those who do.  The SCA ***requires*** Windstream to respond to state grand jury subpoenas.  Unless the SCA ***also*** requires Windstream to insist upon statutory service on its in-state agent before complying with an otherwise legitimate grand jury subpoena, Windstream has not violated the SCA.

**IMPORTANT NEW AUTHORITY**

In addition to suing Windstream, Plaintiffs' counsel filed two companion cases against Yahoo! and MySpace in different federal district courts. Both of those cases have now been dismissed on the defendants' motions.

On the same day she filed this case, Sams filed a nearly identical putative class action against Yahoo! that was transferred to the United States District Court for the Northern District of California. That case is based on a grand jury subpoena issued out of Lowndes County, Georgia, like the one issued to Windstream. On May 16, 2011, the Northern District of California dismissed the case in its entirety.[2] The court rejected the precise arguments raised by Sams here, concluding:

- "[T]he subpoenas at issue here were not subject to the Uniform Act and thus were not invalid on their face." *Sams v. Yahoo!*, at *17.

- Yahoo complied properly with the terms of the subpoenas when it "appropriately elected to produce the documents before the deadline in order to reduce the likelihood that its [sic] representatives would need to appear in person before the grand jury." *Id*. at *18.

- "It is apparent that Yahoo! is subject to personal jurisdiction in Georgia and that it could not resist compulsory disclosure by arguing that its regional office had no control over the subpoenaed documents." *Id*. at *16.

So the first court to squarely address the issues presented here reached precisely the

---

[2] *Sams v. Yahoo!, Inc.*, 2011 U.S. Dist. LEXIS 53202 (N.D. Cal. May 16, 2011) ("*Sams v. Yahoo!*"). The court granted leave to amend only because the court could not "say with certainty that Sams could not allege facts tending to show that Yahoo! impermissibly disclosed **content-based** information." *Id*. at *22 (emphasis added). There is no question here that Windstream did **not** disclose content-based information. *See* 4/14/11 Affidavit of Lethlyn Pumphrey-Harp ("Harp Aff.") (Dkt. 36), Ex. B.

same conclusion as this Court's initial impression at the parties' March 3, 2011 status conference: by responding to a Georgia grand jury subpoena faxed to its subpoena administrator's North Carolina office, Windstream did not violate the SCA.

Plaintiffs' counsel also filed a class action against MySpace (this time, with a different plaintiff) alleging violations of the SCA relating to a Georgia search warrant faxed to California. The Southern District of New York dismissed that case in its entirety on June 1, 2011. *Hubbard v. MySpace, Inc.*, 2011 U.S. Dist. LEXIS 58249 (S.D.N.Y. June 1, 2011). Significantly, the court concluded that section 2703(e) immunity applied even though "[b]y issuing a warrant for a search of MySpace's records custodian in California, the issuing magistrate indisputably exceeded his ordinary territorial authority." *Id.* at *12. In sum, every permutation of Plaintiffs' claims have now been ruled on and rejected.

**ARGUMENT AND CITATION OF AUTHORITIES**

## I.   Defendants Complied with the Plain Language of the SCA.

Plaintiffs have filed the exact claim against Windstream that the SCA was designed to prevent – a cause of action based on an Internet service provider's ("ISP") compliance with a grand jury subpoena. Despite attempts to reframe their claims to avoid the SCA's two immunity provisions, all of Plaintiffs' claims are barred as matter of law. Plaintiffs reach far and wide in search of some law that Windstream has violated. They look to Georgia's Uniform Act to Secure an Out of State Witness, they look to the Privacy Statement, and they look to vague notions

of state sovereignty, all discussed below.  However, they spend little time actually looking to the SCA—the only inquiry that matters here.

### A. Section 2303(e)'s Immunity Applies Because Windstream Supplied Information in Accordance with the Subpoena's Terms.

"No cause of action shall lie in any court against any [ISP] for providing information . . . in accordance with the terms of a court order, warrant, subpoena, statutory authority, or certification under this chapter."  18 U.S.C. § 2703(e). Plaintiffs argue that Windstream's compliance was not "in accordance with the terms" of the subpoena since (1) Windstream produced documents but did not send a witness, and (2) Windstream's compliance was allegedly "voluntary."  Neither argument is supported by a shred of legal authority, and neither is correct.[3]

Plaintiffs argue that because the subpoena required Windstream to "appear" and "bring with you" certain information, Windstream's decision to provide the information but not a witness means that it "**voluntarily** produced documents *in lieu of* complying with the actual terms of the subpoena."  Plaintiffs' Response (Dkt. 45) at 20 (emphasis in original).  But the subpoena expressly states that "[t]he following *records* are hereby subpoenaed:  Any and all billing information, subscriber information, and location of the following I.P. addresses . . . ."  (emphasis added).  The claim that Windstream supplied

---

[3] Plaintiffs also quibble with Windstream's use of the term "immunity," but the Northern District of California recently confirmed that sections 2703(e) and 2707(e) provide just that:  *Sams*, 2011 U.S. Dist. LEXIS 53202, at *9-10 ("The Stored Communications Act contains two separate immunity provisions: 18 U.S.C. § 2703(e) and 18 U.S.C. § 2707(e).").

the requested information voluntarily simply because it did not ***also*** send a witness is devoid of legal authority or logic.[4]  The Northern District of California rejected this argument, stating, "Sams does not cite any authority holding that a person or entity responding to a subpoena must hand-deliver the documents as specified exactly in the subpoena.  The fact that the prosecutor in charge subsequently determined that Yahoo!'s appearance was unnecessary does not support a *post hoc* finding that Yahoo! failed to comply with the terms of the subpoena."  *Sams*, 2011 U.S. Dist. LEXIS 53202, at *18.

Next, Plaintiffs insist that Windstream's compliance was "voluntary" and therefore could not be in accordance with the terms of the subpoena.  Plaintiffs simply do not respond to the fact that the term "voluntary" appears nowhere in the relevant provisions of the SCA, and thus is not the touchstone of liability that Plaintiffs pretend.[5]  They cite no authority to justify reading an "involuntary" prerequisite in the section 2703(e) immunity provision.  That provision does not use the term, nor does the disclosure requirement in section 2703(c)(2), which states that an ISP "shall disclose to a government entity [account information] of a subscriber to customer of such service when the governmental entity uses . . . a

---

[4] Indeed, if Windstream had both sent a witness and produced the information, Plaintiffs undoubtedly would have argued that by doing both, when the cover letter suggested that Windstream could just produce the information, Windstream impermissibly acted "voluntarily."

[5] While Plaintiffs note that the term "voluntary" appears in the heading of a ***different*** portion of the SCA, this only confirms its inapplicability to provisions from which it is omitted.  *See Russello v. United States*, 464 U.S. 16, 23 (1983).

State grand jury subpoena."  Plaintiffs also fail to respond to the obvious point that Windstream did not spontaneously send Harold Sams's account information to the Lowndes County district attorney.  Rather it did so in response to a properly issued subpoena by a court of competent jurisdiction under whose jurisdiction Windstream was subject.  Even if Windstream could have insisted on being served in Georgia, that does not render Windstream's compliance with the subpoena voluntary in any meaningful—or statutorily relevant—sense.[6]

Plaintiffs do not dispute that Windstream is subject to personal jurisdiction in Georgia, and that is critical here.  As the Northern District of California properly observed, "[i]t is apparent that Yahoo! is subject to personal jurisdiction in Georgia and that it could not resist compulsory disclosure by arguing that its regional office had no control over the subpoenaed documents."  *Sams*, 2011 U.S. Dist. LEXIS 53202, at *16.  Indeed, the court noted that Yahoo! had previously "attempted unsuccessfully to resist producing documents that had been subpoenaed by out-of-state authorities" in the case *Tamburo v. Dworkin*, No. 04-C-3317 (N.D. Ill. Mar. 23, 2007).  *Id.* at *15-16.  Thus Plaintiffs' contention that Windstream produced the subpoenaed information voluntarily is not only irrelevant, it is also incorrect.[7]

---

[6] Nor does the assistant district attorney's characterization of partial compliance as "voluntary" in the subpoena's cover letter control when the subpoena itself commanded the production of the information.

[7] Although Plaintiffs claim that Windstream has missed "the important distinction between a state court grand jury subpoena, which is a criminal subpoena, and a

In short, there is no requirement in sections 2703(c) or (e) that the recipient of a subpoena obtain an order compelling compliance with a subpoena or even make an independent judgment of "validity" before complying.  And even if there were, section 2707(e)'s good faith provision would protect all ISP's who reached an erroneous but good faith conclusion about the subpoena's validity.

### B. Section 2707 Also Immunizes a Party that Discloses Information Due to a Good Faith Misunderstanding of the Limits of Its Authority.

Plaintiffs assert that the section 2707 good faith defense somehow proves that Congress intended ISPs to confirm the "validity" of subpoenas before responding to them.  Instead, that section creates the more general protection against liability where an ISP unintentionally exceeds the limits of its authority under a subpoena, whether valid or invalid.  Plaintiffs claim that a 2004 Eastern District of Virginia case is the "seminal case" describing the good faith defense in section 2307(3).  *Freedman v. Am. Online, Inc.*, 325 F. Supp. 2d 638 (E.D. Va. 2004). But a later First Circuit case opines on an aspect of Congress's intent behind the provision that is neglected by *Freedman*.  In *United States v. Councilman*, 418 F.3d 67, 83-84 (1st Cir. 2005), the First Circuit stated that "Congress contemplated that service providers might, in good faith, misunderstand the limits of their authority on a particular set of facts, and provided a statutory mechanism to solve this problem."  Aside from noting (pointlessly) that *Councilman*

civil subpoena." Plaintiffs' Response (Dkt. 45) at 16, apparently the Northern District of California missed that distinction too.  Plaintiffs never actually state what that important distinction is, nor do they cite authority that a criminal subpoena would somehow have ***less*** far-reaching power than a civil subpoena.

addressed a criminal prosecution for violation of the Wiretap Act (which has precisely the same immunity provision as the SCA), Plaintiffs' only argument as to why the immunity provision as explained by *Councilman* does not apply here is because of "the patent invalidity" of the subpoena here.  Plaintiffs' Response (Dkt. 45) at 22.  That "distinction" would require the Court to conclude that the subpoena was so obviously flawed that Windstream could not have believed in good faith that it was allowed (and required) to respond—a fact not in the complaint and not plausible given the subpoena itself.  That conclusion is also belied by both the Northern District of California and this Court's initial view, neither of which found the subpoena invalid, let alone "patently" so.[8]

While Plaintiffs work hard to try to distinguish the section 2707 cases cited by Windstream, those cases simply provide examples in which courts have applied the good faith provision of section 2307 **as a matter of law**.  *See Bansal v. Server Beach*, 285 Fed. Appx. 890, 892 (3d Cir. 2008); *McCready v. eBay, Inc.*, 453 F.3d 882, 892 n.2 (7th Cir. 2006); *Bansal v. Microsoft Hotmail*, 267 Fed. Appx. 184, 185 (3d Cir. 2008).  Plaintiffs' strained distinctions do not address that point.  These cases confirm that the Court has the power to apply the good faith provision here.

## II.    This Case is About Service, No Matter What Plaintiffs Say.

### A. Plaintiffs' Challenge to the "Validity" of the Subpoena Is Really an Attack on How and Where the Subpoena Was Served.

---

[8] *See also* Windstream's Opening Brief (Dkt. 33) at 12, n.7 (citing cases where courts have found no bad faith for violations of statutes based on nonfrivolous statutory constructions).

Recognizing that they have no standing to complain about how the subpoena was served on Windstream, Plaintiffs resort to the untenable strategy of attacking the "validity" of the subpoena itself, allegedly divorced from any issue of service. Yet, Plaintiffs repeatedly acknowledge that their true grievance is how and where the subpoena was served.  To begin, the entire basis of Plaintiffs' **complaint** is their contention that Windstream violated the SCA by accepting service of subpoenas by fax outside of the issuing state.  *See, e.g.*, Complaint (Dkt. 1-1) ¶ 21 ("Windstream routinely and unlawfully ***accepts*** as valid legal process ***facsimile transmissions*** of state grand jury or trial subpoenas") (emphasis added).[9]  Likewise, Plaintiffs repeatedly lapse into service-based arguments in their response brief.  *See, e.g.*, Plaintiffs' Response (Dkt. 45) at 4 ("A state grand jury subpoena has no force and effect outside the territorial jurisdiction of the state of issuance and ***when faxed or sent out of the issuing state***, that subpoena is facially invalid and unenforceable.") (emphasis added).  Finally, Plaintiffs' counsel admitted publicly that Plaintiffs would have no claim if Windstream's Georgia registered agent had been served: "[Joshua] Millican said that, to his knowledge, in none of the cases had the companies' registered agents in Georgia been served.  'If they had, we wouldn't

---

[9] While Plaintiffs accuse Defendants of "misleading" the Court by claiming that this case is about methods of service of process, it is Plaintiffs' complaint that defines its claim, not their attempt to recharacterize their claims in their response brief.

have a case."[10]  Whether they call it "service" or "process," Plaintiffs' true

grievance is how and where the subpoena was delivered to, and accepted by,

Windstream.  Those questions impact only the rights of Windstream and only

Windstream has standing to challenge them.

### B. Plaintiffs Have No Answer to Their Standing Problem.

Plaintiffs make a cursory attempt to defend their standing by claiming that "[i]t

is clear that if Plaintiffs had received notice of the subpoena, they would have had

standing to seek to quash it."  Plaintiffs' Response (Dkt. 45) at 28.  This claim is

wrong for two reasons.  First, Plaintiffs were never entitled to notice under the SCA.

The SCA states that notice to the subscriber "is not required" when subscriber records

(rather than content) are being disclosed.  18 U.S.C. § 2703(c)(3).  Only subscriber

records were disclosed here.  Harp Aff. (Dkt. 36), Ex. B.  Thus regardless of where the

subpoena was issued or how it was served, Plaintiffs would never have received notice

and never would have been entitled to challenge Windstream's disclosure.

Second, the only standing addressed by Plaintiffs' cases is standing to challenge

a subpoena when it would invade a "personal right or privilege."[11]  Even if the subject

---

[10] Land, Greg, *Internet Privacy Suits Filed Against Yahoo, Others*, Law.com (Oct. 7,
2010) *at* http://www.law.com/jsp/law/LawArticleFriendly.jsp?id=1202472987882.

[11] *See Chasten v. Franklin*, 2010 U.S. Dist. LEXIS 113284, at *3 (N.D. Cal. Oct.
14, 2010) *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 973, at *3 (C.D.
Cal. 2010); *J.T. Shannon Lumber Co. v. Gilco Lumber, Inc.*, 2008 U.S. Dist. LEXIS
104966 (N.D. Miss. Aug. 14, 2008); *cf. Hone v. Presidente U.S.A., Inc.*, 2008 U.S.
Dist. LEXIS 55722 (N.D. Cal. July 21, 2008) (holding that the SCA does not permit
disclosure in response to civil subpoena and never reaching question of standing).

of a subpoena may in some circumstances have standing to seek to protect **his own rights** (such as those under the attorney-client privilege, or relating to the confidentiality of the information), no case has held that person has standing to object to someone else's failure to raise a jurisdictional or service-based defense to a subpoena.  Sams has not cited a single case allowing a party other than the subpoenaed party to challenge personal rights such as jurisdiction, service, or process.

Sams's attempts to distinguish the single most relevant precedent (short of the companion *Sams* and *MySpace* cases), *Booker v. Dominion Va. Power*, 2010 U.S. Dist. LEXIS 44960 (E.D. Va. May 7, 2010) fail.  *Booker* holds that "[t]o the extent Booker seeks to assert a claim against Dominion or TDS for accepting service of the subpoena by facsimile, the right to insist on service by a particular means is a right personal to Dominion that Booker lacks standing to challenge."  *Id* at *16.  Sams argues that the court did not reach 18 U.S.C. § 2703(e) because the plaintiff did not oppose the dismissal of TDS, the internet service provider in that case.  Yet in dismissing TDS, the court held that dismissal was appropriate because "Section 2703(e) bars any cause of action against a telecommunications provider for providing information in response to a subpoena.  *Id*. at *22.  Moreover, the court noted that "much of the analysis with regard to Dominion [another defendant **not** voluntarily dismissed] also applies to TDS."  *Id*. at *23, n.3.  In any event, the court's holding that "the right to insist on service by a particular means is a right personal to Dominion that Booker lacks standing to challenge," *id*. at *16, does not hinge on the purported distinctions identified by Sams.

### III. State Law and the Privacy Statement Are Inapplicable to the Interpretation of the SCA.

#### A. The Uniform Act Does Not Apply.

Plaintiffs' Response raises the new allegation that Windstream's compliance with the grand jury subpoena was not in accordance with Georgia's Uniform Act. Indeed, although their complaint makes no such allegation, Plaintiffs' case now hinges on the premise that, by failing to avail itself of the Uniform Act, the superior court's subpoena was automatically "invalid." This is wrong for three reasons.

#### 1. *The Witness Is Not Outside the State of Georgia.*

Plaintiffs rely entirely on the mistaken (and un-alleged) premise that Windstream is "out of state" and that it has no witnesses in the state of Georgia. *See* Plaintiffs' Response (Dkt. 45) at 22 ("The subpoena, by purporting to require production of a witness and documents *in North Carolina* to appear in Georgia, was facially invalid.") (emphasis added). Plaintiffs, however, cannot rely on a theory that the subpoena called for the attendance of an out-of-state witness where the subpoena does not say so and the complaint fails to allege (and could not properly allege) that Windstream has no in-state employees subject to subpoena.

Although the subpoena was faxed to the Windstream subpoena compliance department in North Carolina, it does not require the appearance of a specific individual located in North Carolina (or anywhere outside of Georgia). Instead, it commands the appearance only of "Windstream Communications." *See* Harp Aff. (Dkt. 36), Ex A. And Plaintiffs do not dispute that Windstream Communications has a business presence

in Georgia, and indeed, has witnesses available to testify in Georgia.[12]  A Georgia court

can compel a local Windstream employee from its Georgia office to appear before a

grand jury and produce documents.  *In re Marc Rich & Co., A.G.*, 707 F.2d 663, 667 (2d

Cir. 1983).[13]  As such, the subpoena does not require the attendance of a North Carolina

witness and the entire discussion of the Uniform Act is irrelevant.

Several courts have confirmed that the Uniform Act does not apply to

corporations registered to do business in the state.  In *GM Corp. v. State*, 357 So. 2d

1045, 1047 (Fla. Dist. Ct. App. 1978), the Florida Court of Appeals held that "the

Uniform Law applies only to witnesses located outside of Florida.  ***Since the instant***

***subpoena duces tecum . . . is directed to a foreign corporation authorized to do,***

***registered to do and doing business in Florida, the Uniform Law is inapplicable***."

*Id*. (emphasis added); *see also CMI, Inc. v. Landrum*, 2010 Fla. App. LEXIS 8700

(Fla. Dist. Ct. App. June 18, 2010).  That makes perfect sense, given that the very

purpose of requiring a corporation to designate an in-state agent is to avoid the

---

[12] If Windstream is required to send a witness to testify in Georgia due to its local
presence, it certainly does not violate the SCA for Windstream to decide on its own
which corporate witness to send.

[13] *See also Security Mortg. Investors v. Hicks*, 1975 U.S. Dist. LEXIS 16769, at
*14 (N.D. Ga. Dec. 30, 1975) ("It makes no difference that a particular document
is kept at a place beyond the territorial jurisdiction of the court that issues the
subpoena.").  Plaintiffs claim that *Hicks* supports the opposite contention, but
*Hicks* simply makes clear the non-controversial point that personal jurisdiction is
not enough **when the entity over which the court has jurisdiction** lacks "control"
over the documents.  *Id*., at *15 ("In the absence of such control, therefore, even
the existence of personal jurisdiction in this court is insufficient to create
jurisdiction over the documents which are outside of the district.").

difficulties otherwise associated with serving an out-of-state party.

The Northern District of California made the same finding with respect to Sams's claims.  It held, "[a]s the court held in *Dworkin*, Yahoo! is 'one entity,' and the location of the documents or duties of employees at particular regional offices is irrelevant to its obligation to produce documents sought by subpoena.  Accordingly, ***this Court concludes that the subpoenas at issue here were not subject to the Uniform Act and thus were not invalid on their face*.**"  *Sams*, 2011 U.S. Dist. LEXIS 53202, at \*16-17.

### 2.   *Plaintiffs Lack Standing under the Uniform Act.*

Even if the subpoena compelled the attendance of an "out of state" witness, Plaintiffs would have no more standing to complain about the failure of the district attorney to use the Uniform Act than they would to complain about method of service and jurisdiction generally.  After all, the Uniform Act is ultimately about personal jurisdiction over the witness, and only the witness has standing to assert that right.

Two courts have reached this conclusion.  In *Forbes v. Indiana*, 810 N.E. 2d 681, 684 (Ind. 2004), an out-of-state third party hospital was subpoenaed to produce medical records. The defendant sought to suppress the medical record evidence on the basis that the Uniform Act was not used to issue the subpoena.  While the Indiana Supreme Court agreed that the Uniform Act was not followed, it held that the defendant "ha[d] no basis to complain . . . if, as here, the documents are supplied in response to a subpoena that resulted from proceedings other than those provided by the Uniform Act." *Id*.  In so holding, the court noted that "[t]he procedure contemplated by the [Uniform Act] is

for the benefit of the witness, not the parties."  *Id*.; *see also Hobbs v. McKune*, 2006 U.S. Dist. LEXIS 82252, at *17 (D. Kan. Nov. 8, 2006), aff'd, 332 Fed. Appx. 525 (10th Cir. 2009) ("The Uniform Act is permissive, not mandatory; it is for the benefit of witnesses, not parties to litigation.").  So even if Plaintiffs were correct that the Uniform Act **could have** been used, they have no standing to complain that it was not.

### 3.  *The Uniform Act Does Not Provide the Exclusive Method for Obtaining Information Across State Lines.*

Plaintiffs mistakenly appear to believe that the Uniform Act **limits** a court's subpoena power, rather than **expanding** it; they presume that a subpoena that does not comply with the Uniform Act can never be valid.  Yet Plaintiffs cite no authority that the Uniform Act provides the **only** method of securing an out-of-state witness.  Indeed, just like Georgia's rules on statutory service, which set forth acceptable means of effecting service, but do not restrict the use of other means (see O.C.G.A. § 14-2-504(c) and O.C.G.A. § 24-10-23), "[t]he Uniform Act . . . does not purport to be the exclusive method for sharing information across state lines."  *Forbes*, 810 N.E.2d at 683.

### B. Plaintiffs' SCA Claims Are Not Affected by the Privacy Statement.

Plaintiffs argue that the Privacy Statement, which notifies subscribers that Defendants may disclose certain information "[t]o comply, when required by law, with . . . civil or criminal subpoenas . . . [and] grand jury investigations" Complaint (Dkt. 1-1), Ex. A at 3, somehow causes Defendants to have violated the SCA.  But Defendants **were** required by law—the SCA—to disclose Harold Sams's information.  Plaintiffs cite no authority holding that by informing a party that they will respond to subpoena

when required by law, Defendants waived their right to accept service.

At any rate, the idea that Windstream "waived" the right to accept service via alternative means, even if correct, would not change the SCA analysis. If the SCA does not require formal service, then Plaintiffs at best would have a breach of contract claim. That breach of contract claim is subject to multiple problems, discussed below.

### C. This Case Is Not About Privacy Rights.

While Plaintiffs repeatedly insist that this case is about their privacy interests, they ignore a key provision of the SCA disproving that. Under the SCA, notice to the subscriber "is not required" when subscriber records (rather than content) are being disclosed. 18 U.S.C. § 2703(c)(3). Thus, regardless of how the subpoena was issued or served, Plaintiffs would never have received notice or been entitled to challenge Windstream's disclosure. The process of having a subpoena issued out-of-state has nothing to do with subscriber privacy since it does not affect whether information will divulged or even what showing the government must make to obtain it.

### D. This Case Is Not About State Sovereignty.

Plaintiffs pepper their brief with vague invocations of state sovereignty, but they have no standing to invoke the sovereign interests of the states. In any event, the sovereignty of North Carolina is not in the least impaired by a corporation that is registered in Georgia *accepting service* of a Georgia subpoena at a North Carolina fax number. And whether Defendants complied with the SCA also has nothing to do with the sovereign interests of North Carolina and Georgia. To be clear, Defendants'

argument is not that the SCA somehow expands the subpoena power of the state courts.  To prevail, Defendants do not need the SCA to expand state court subpoena power; they merely need it to not affirmatively impose liability.  The SCA does not impose liability—it creates immunity—where the government uses a subpoena.

### E.  This Case Is Not About Taking the Easy Way Out.

Defendants do not argue that they should be allowed to take the easy way out in lieu of complying with the SCA.  Rather, this case should be dismissed because Windstream's conduct complied with both the letter and spirit of the statute. Defendants—along with the National District Attorneys' Association—do, however, believe that Plaintiffs' interpretation of the SCA would impede law enforcement's ability to expeditiously investigate dangerous crime.  While Plaintiffs note in their response to the NDAA's amicus brief that the SCA allows for emergency disclosures in some circumstances, those circumstances are limited to "an emergency involving danger of death or serious physical injury."  18 U.S.C. § 2702(c)(4).  The emergency disclosure exception does not help in the myriad other time-sensitive cases, such as where computer or web-based information is about to be destroyed, money is about to be illegally wired, or any number of other criminal investigations.

There is a critical difference between Windstream's actual argument and Plaintiffs' claim that "Defendants' argument suggests a district attorney could hand write 'grand jury subpoena' on a postcard or piece of notebook paper, send it to Defendants, and Defendants would then be compelled by law to respond."  Plaintiffs'

Response (Dkt. 45) at 8.  What Plaintiffs describe are not subpoenas at all.  No one

disputes that the subpoena in question was an actual subpoena that was properly issued

by a court of competent jurisdiction under whose jurisdiction Windstream was subject.

Plaintiffs simply challenge its "validity" by claiming it was allegedly served "without

any lawful or facially valid process."  *Id*. at 1.  No one is suggesting that Defendants

would have immunity for responding to something that is not a subpoena at all.

## IV.    The Remaining Causes of Action Should Be Dismissed.

### A. The Wiretap Act Claim Must Be Dismissed Because Windstream Did Not Disclose Any "Content."

Plaintiffs defend their Wiretap Act claim only by claiming that the Court cannot

consider the Sams subpoena and Windstream's response, filed as exhibits to the Harp

Affidavit submitted with Windstream's Motion for Judgment on the Pleadings.  These

documents prove that no content was disclosed, and thus the Wiretap Act does not

apply.  Plaintiffs' claim is belied by the fact that they themselves rely on these

documents ***throughout their brief*** on pages 4, 5, 15, 16 and 20—until the very last

page, when then contend that those documents cannot be considered as "outside the

pleadings."  Plaintiffs' Response (Dkt. 45) at 30.  It is clear that the Court may rely on

these documents, since Plaintiffs do not dispute their authenticity and they are central

to Plaintiffs' claim.  *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).  It is

equally clear based on the face of those documents that Windstream produced ***only***

account information that does not qualify as "content."  For this reason, and because

the Wiretap Act's immunity provision applies with the same force as the SCA's

immunity provision, Plaintiffs' Wiretap Act claim must be dismissed.

### B. The Breach of Contract Claim Based on the Privacy Statement Must Be Dismissed.

Plaintiffs' breach of contract claim should be dismissed because it depends on the untenable finding that Windstream violated the SCA. Plaintiffs contend that Windstream violated the Privacy Statement's provision that "Windstream may provide [account information] to third parties . . . [t]o comply, when required by law, with . . . civil or criminal subpoenas, . . . grand jury investigations, civil or criminal governmental investigations . . ." Complaint (Dkt. 1-1), Ex. A at 3. But because the SCA *required* Windstream to respond to the subpoena, it did not act inconsistently with the Privacy Statement. Moreover, the SCA expressly immunizes Windstream against a breach of contract claim because it applies to all causes of action, no matter what the theory. 18 U.S.C. § 2703(e). Thus, if the SCA claim fails, so does the breach of contract claim.

Additionally, Plaintiffs concede that "technically" Fayelynn Sams is not a Windstream subscriber. Plaintiff's Response (Dkt. 45) at 3, n.3. While Plaintiffs downplay this defect as a technicality, the result is that Fayelynn Sams is not a party to any contract with Windstream, and their Privacy Statement claim does not apply to her.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for judgment on the pleadings on all claims.

Respectfully submitted, this 16th day of June, 2011.

_/s/ Alison B. Prout_
Frank M. Lowrey IV
Georgia Bar No. 410310
lowrey@bmelaw.com
Alison B. Prout
Georgia Bar No. 141666
prout@bmelaw.com

**BONDURANT, MIXSON & ELMORE, LLP**   *Attorneys for Defendants*
One Atlantic Center, Suite 3900
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that this document complies with the font and point selections set forth in Local Rule 5.1(C). This document was prepared in Times New Roman 14 point font.

Respectfully submitted, this 16th day of June, 2011.

*/s/ Alison B. Prout*
Alison B. Prout
Georgia Bar No. 141666
Email: prout@bmelaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, a true and correct copy of the within and

foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR**

**JUDGMENT ON THE PLEADINGS** was electronically filed with the Clerk of

Court using the Court's electronic filing system which will automatically send an

email notification of such filing to the following attorneys of record who are

registered participants in the Court's electronic notice and filing system:

> Joshua A. Millican, Esq.
> Law Office of Joshua A. Millican, P.C.
> The Grant Building, Suite 607
> 44 Broad Street, N.W.
> Atlanta, Georgia  30303
>
> Lisa T. Millican, Esq.
> Greenfield Millican P.C.
> 607 The Grant Building
> 44 Broad Street, N.W.
> Atlanta, Georgia  30303
>
> Matthew C. Billips, Esq.
> Billips & Benjamin LLP
> One Tower Creek
> 3101 Towercreek Parkway, Suite 190
> Atlanta, Georgia  30339

This 16th day of June, 2011.

> */s/ Alison B. Prout*
> Alison B. Prout
> Georgia Bar No. 141666